**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

R.P., husband on behalf of his
minor son, C.P.; J.P., wife, on
behalf of her minor son, C.P.,
                *Plaintiffs-Appellants,*

v.

PRESCOTT UNIFIED SCHOOL DISTRICT,
an Arizona School District; KEVIN
J. KAPP, Superintendent, Prescott
Unified School District; JOHN
DOES, I-V; JANE DOES, I-V;
BLACK AND WHITE CORPORATIONS,
I-X,
                *Defendants-Appellees.*

No. 09-15651

D.C. No.
3:07-cv-08072-
NVW

R.P., husband on behalf of his
minor son, C.P.; J.P., wife, on
behalf of her minor son, C.P.,
                *Plaintiffs-Appellants,*

v.

PRESCOTT UNIFIED SCHOOL DISTRICT,
an Arizona School District; KEVIN
J. KAPP, Superintendent, Prescott
Unified School District; JOHN
DOES, I-V; JANE DOES, I-V;
BLACK AND WHITE CORPORATIONS,
I-X,
                *Defendants-Appellees.*

No. 09-16786

D.C. No.
3:07-cv-08072-
NVW

OPINION

2235

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued April 14, 2010
Submitted April 16, 2010
San Francisco, California

Filed February 4, 2011

Before: Alex Kozinski, Chief Judge, Consuelo M. Callahan,
Circuit Judge and Ricardo S. Martinez, District Judge.*

Opinion by Chief Judge Kozinski

---

*The Honorable Ricardo S. Martinez, United States District Judge for
the Western District of Washington, sitting by designation.

**COUNSEL**

Gregory S. Fisher (argued), Birch Horton Bittner and Cherot, Anchorage, Alaska, and Gary L. Lassen, The Law Office of Gary L. Lassen, PLC, Phoenix, Arizona, for the plaintiffs-appellants.

Rachel Love (argued), Eileen Dennis GilBride and Georgia A. Staton, Jones, Skelton & Hochuli, P.L.C., Phoenix, Arizona, for the defendants-appellees.

## OPINION

KOZINSKI, Chief Judge:

We review the award of attorney's fees to a prevailing school district under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*

## Facts

C.P. has autism. When he enrolled in elementary school, the school district created an individualized education program (IEP) for him. C.P. was placed in a special education class where he regularly met with speech and occupational therapists; he was also assigned a paraprofessional aide for one-on-one instruction. When he started school at age five, in 2003, C.P. didn't respond to his name, could barely speak, ran away from adults, showed no fear in unsafe situations, had a short attention span, and hit, pinched and spat. By 2006, at age seven, C.P. responded to his name, could say short phrases, had gotten fairly good at solving puzzles and was better able to communicate with adults, among other favorable developments. But he still was not toilet-trained, lacked the motor skills to draw a picture and remained at the preschool level academically. Unhappy with C.P.'s progress, his parents filed an administrative complaint alleging that the school district violated the IDEA during the 2003-04, 2004-05 and 2005-06 school years by failing to provide him a free appropriate public education (FAPE).

The Administrative Law Judge ruled in favor of the school district, holding that C.P. wasn't denied a FAPE, and also that the parents' claims for the 2003-04 school year were untimely. *See* 20 U.S.C. 1415(f)(3)(c). The parents appealed to district court under the IDEA, and added claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Due Process Clause.

The district court addressed the IDEA claim first. It adopted all of the ALJ's findings and concluded that the school district hadn't failed to provide C.P. with a FAPE. The court then ordered the parents to show cause why their non-IDEA claims shouldn't also be dismissed, since "the Complaint does not allege facts beyond the bare minimum to support the IDEA claim." The parents sought leave to amend in order to allege new theories of relief, but the district court refused and dismissed the complaint. The court also found that the parents' action was without foundation and brought for an improper purpose, and so awarded the school district about $140,000 in attorney's fees and costs against the parents and their lawyer. The parents appeal.

## Discussion

[1] **1.** *IDEA Claim.* "The IDEA provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures." *N.B.* v. *Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008) (internal quotation marks omitted). Its primary goal is "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services." *Id.* (quoting 20 U.S.C. § 1400(d)(1)(A)). A state must comply with the procedures set forth in the IDEA, among which is the development of an IEP that is "reasonably calculated to enable the child to receive educational benefits." *Id.* (internal quotation marks omitted); *see also Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist.* v. *Rowley*, 458 U.S. 176, 200-04 (1982). We review de novo the district court's decision that the school district complied with the IDEA, *see N.B.*, 541 F.3d at 1207, and review its factual determinations for clear error, *see J.L.* v. *Mercer Island Sch. Dist.*, 592 F.3d 938, 949 (9th Cir. 2010). We address the 2004-05 and 2005-06 school years only, as the parents waived their 2003-04 school year claims at oral argument.

The parents complain that the school district failed to include an autism expert on C.P.'s IEP team, which consisted of C.P.'s parents, a special education teacher, a school district representative, an occupational therapist, a speech/language therapist and a regular education teacher. But the IDEA doesn't require that the team include an expert. *See* 20 U.S.C. § 1414(d)(1)(B). The case the parents cite to support their claim that the IEP team must include "at least one teacher or other specialist with knowledge in the area of suspected disability" relies on a regulation that was in effect only until 1999, *see* 34 C.F.R. § 300.532(e), and thus predated C.P.'s time in the school district. *See Seattle Sch. Dist., No.1* v. *B.S.*, 82 F.3d 1493, 1499 (9th Cir. 1996). C.P.'s IEP team was properly constituted under the regulations that governed the 2004-05 and 2005-06 school years. *See* 34 C.F.R. § 300.344(a); *see also J.W. ex rel. J.E.W.* v. *Fresno Unified Sch. Dist.*, No. 09-16123, 2010 WL 4117665, at *26-27 (9th Cir. Oct. 19, 2010).

**[2]** The parents also argue that the IEP didn't take C.P.'s individual needs into account, as the IDEA requires. *See* 20 U.S.C. § 1414(d)(3)(A)-(B). Rather, they allege, the school district "implemented the same program and same form of IEP year after year," and C.P.'s "goals and objectives were simply increased and cut and pasted from prior IEPs." It is true that school districts must develop IEPs tailored to each child's unique needs and reasonably calculated to provide educational benefit. *J.L.*, 592 F.3d at 951 n.10. When C.P. started school, the district retained a licensed pediatric psychologist to evaluate C.P.'s individual needs. The district reassessed those needs annually to reflect areas in which C.P. had made progress, and revised his IEP accordingly. The IEPs for the years at issue, both of which were signed by C.P.'s parents, reflect meaningful changes in goals and objectives. The record doesn't support the parents' objections. *See J.W. ex rel. J.E.W.*, 2010 WL 4117665, at *14-15, *22.

**[3]** The parents further complain that the school district failed to base its IEP on peer-reviewed research, as they argue

20 U.S.C. § 1414(d)(1)(A)(i)(IV) requires. The teachers would "pick and choose the techniques [they] liked," rather than utilize "best practices" that have been demonstrated to be effective. The IDEA accords educators discretion to select from various methods for meeting the individualized needs of a student, provided those practices are reasonably calculated to provide him with educational benefit. *See, e.g.*, *Adams* v. *Oregon*, 195 F.3d 1141, 1149-50 (9th Cir. 1999); *Deal* v. *Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 861-62 (6th Cir. 2004). The parents have introduced no evidence that the methods selected for C.P., including the Discrete Trial Training (DTT), Applied Behavior Analysis (ABA) and TEACCH methods, were inappropriate under the IDEA. In fact, the parents' own expert testified that the ABA and DTT methods "have been scientifically ruled as evidence based for children with autism," and that it would be appropriate for teachers to pick and choose among methodologies, if the ones they "chose were proven effective."

[4] The parents allege that C.P. was denied a FAPE because "there was no objectively measured data collection," since measurement of his IEP goals was based on teachers' subjective observations. But the district court correctly found that the IEPs contained "measurable annual goals, including academic and functional goals," as the IDEA requires. *See* 20 U.S.C. § 1414(d)(1)(A)(i)(II). C.P.'s IEPs list goals such as "improve communication skills" and "increase self help skills," with concrete descriptions of how C.P.'s progress would be measured. For example, the goal of "improved fine-motor skills" could be met by performing "8/10 benchmarks as [m]easured by [t]herapists observations and records." These benchmarks included: 1/4 times, C.P. "will copy a vertical line and a horizontal line"; 2/4 times, C.P. "will cut along a curved line to within 3/4 inch of the black line"; and when coloring, 2/4 times, C.P. will "stay with-in the lines of a small design, 30 then 40 percent." The school district recorded the objectively measurable progress C.P. made, and updated his

parents through the annual IEP meetings and quarterly progress reports.

[5] Finally, the parents argue that the district court clearly erred in finding that "[C.P.] made meaningful progress toward each of his annual goals and objectives" and that "[t]here were no IEP goals in which [C.P.] made no progress or made less than expected progress." The record supports the district court's findings. C.P. didn't progress at a constant, linear rate in all areas. But he did progress. When he began school, he could name some objects and a few pictures, had a short attention span and ran from adults. By the end of the 2005-06 school year, he could say many words and form phrases to express a complete thought. He had learned to respond to the word "no" and to listen to adults. He was able to drink from a cup without assistance and to put things away. He was becoming skilled at figuring out puzzles and his coloring skills had improved. He could wash his hands independently and assist in pulling up his pants. On the lone test where C.P. showed no improvement, the district court was entitled to credit the testimony of a licensed school psychologist who explained that the results didn't represent C.P.'s actual progress. *See Anderson* v. *City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). The district court's finding that C.P. made slow but significant educational progress doesn't leave us with a "definite and firm conviction that a mistake has been committed." *J.L.*, 592 F.3d at 949. We affirm its decision that the school district conferred educational benefit on C.P. and therefore complied with the IDEA. *See id.* at 951 n.10.

[6] **2.** *Non-IDEA claims.* Because the parents based their ADA, Rehabilitation Act and Due Process claims entirely on the facts they alleged would establish an IDEA violation, the district court bifurcated the proceedings in order to first resolve the IDEA claim. At that time, the court inquired: "[A]nd no one contemplates any amended pleadings, correct?" The parents' lawyer responded: "That's correct." The district court nevertheless set a deadline for amended plead-

ings. But only after the court had ruled against the parents on their IDEA claim did they seek to amend so as to allege facts supporting new claims that differed in nature from the claims asserted in their original complaint.

**[7]** The parents complain about the denial of their motion seeking leave to amend by adding claims that were substantially different from their original claims. Given that these new claims could have been alleged in the original complaint or before the cutoff date set by the district court for amended pleadings, the court didn't abuse its discretion in denying the parents leave to amend after it had ruled on the IDEA claim.

The only explanation the parents offer for failing to amend within the time allotted is that they believed it would be inappropriate to add new claims once the district court sought to focus on their IDEA claim. But the court expedited the IDEA claim on the assumption that the underlying facts were the same across all the parents' claims. The parents didn't say anything to the contrary, and didn't object to the accelerated schedule. And, after the district court ruled against them on the IDEA claim, the parents didn't seek to revise the original claims in light of the district court's ruling. Instead, they tried to pursue a new theory of relief—one they could easily have presented before the amendment cut-off. "[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark." *Doe* v. *Howe Military Sch.*, 227 F.3d 981, 990 (7th Cir. 2000). The district court didn't abuse its "especially broad" discretion in denying leave to amend. *See Ascon Props., Inc.*, v. *Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989).

**[8] 3.** *Attorney's Fees.* The IDEA allows a prevailing state educational agency or school district to collect fees in certain rare circumstances. It can recover attorney's fees from an attorney who filed a complaint that's "frivolous, unreasonable, or without foundation" or "continued to litigate after the litigation clearly became frivolous, unreasonable, or without

foundation." 20 U.S.C. § 1415(i)(3)(B)(i)(II). It can also recover fees from the parents, or from their attorney, if the suit was presented for "any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." *Id.* § 1415(i)(3)(B)(i)(III). The school district sought fees on both grounds.

The district court awarded $129,951.50 in attorney's fees and $11,260.21 in non-taxable costs against the parents and their counsel. The court found that the parents "lacked a factual and legal basis for their IDEA claim" because even if they could "prove an IDEA violation, they were not entitled to any remedy under the IDEA." First, damages aren't available under the IDEA, *Witte* v. *Clark Cnty. Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999), so the parents couldn't be awarded the monetary "compensation for past failures to educate" that they requested. Second, the parents didn't incur any out-of-pocket expenses, and thus weren't entitled to reimbursement of money they had spent on education-related services. Finally, the parents "had obtained all of the educational services they wanted," because by the time they filed suit in district court, the school district had already taken steps to provide C.P. with the programs and staffing they had sought from the ALJ. Although the parents requested additional services to make up for past failures to educate, the district court believed that they didn't specify, in sufficient detail, the compensatory education they were seeking. The court therefore concluded that the parents initiated a lawsuit without foundation and awarded fees against their counsel under section 1415(i)(3)(B)(i)(II).

The court further found that the complaint was presented for an improper purpose—the parents' anger at the school district. The court reasoned that "[a]nger coupled with a proper purpose is not improper, but anger alone is not a proper purpose for pursuing litigation." Thus, the court also awarded attorney's fees against the parents under section

1415(i)(3)(B)(i)(III). Finally, the district court held that the parents' non-IDEA claims were also "without foundation."

**[9]** There is little case law governing the IDEA's provisions allowing school districts to recover attorney's fees. We've previously noted that the language of the IDEA's fee-shifting statute is "nearly identical" to 42 U.S.C. § 1988, the general fee-shifting provision for federal civil rights cases. *See Aguirre* v. *L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1117 (9th Cir. 2006). And the IDEA's language granting fees to prevailing defendants is nearly identical to the standard the Supreme Court developed in *Christiansburg Garment Co.* v. *EEOC*, 434 U.S. 412, 421-22 (1978), which is now the standard for awarding fees to prevailing defendants in civil rights cases. *See Hughes* v. *Rowe*, 449 U.S. 5, 14 (1980) (per curiam). *Compare* 20 U.S.C. § 1415(i)(3)(B)(i)(II) (permitting award of fees if suit was "frivolous, unreasonable, or without foundation"), *with Christiansburg*, 434 U.S. at 421 (permitting award of fees if suit was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith").

**[10]** The IDEA's legislative history confirms that Congress fashioned section 1415(i)(3)(B)(i)(II) after the *Christiansburg* standard. *See* 150 Cong. Rec. S5250, S5349 (daily ed. May 12, 2004) (statement of Sen. Gregg) ("The first part of the amendment comes from the U.S. Supreme Court case of [*Christiansburg*] . . . ."). The legislative history further reveals that section 1415(i)(3)(B)(i)(III) "comes from another well-established Federal law: Federal Rule of Civil Procedure 11." *Id.*; *see* Fed. R. Civ. P. 11(b) (subjecting parties to sanction for filing pleadings with an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"). Thus, we rely on *Christiansburg* and Rule 11 cases to determine whether the district court abused its discretion in awarding attorney's fees to the school district against the parents and their lawyer.

**[11]** *Section 1415(i)(3)(B)(i)(II).* The district court erred in holding that the parents couldn't have obtained any relief and therefore brought a lawsuit without foundation. The parents *did* ask for relief that was available, because the IDEA offers compensatory education as a remedy for the harm a student suffers while denied a FAPE. *See Parents of Student W* v. *Puyallup Sch. Dist. No. 3*, 31 F.3d 1489, 1496-97 (9th Cir. 1994). Compensatory education is an equitable remedy that seeks to make up for "educational services the child should have received in the first place," and "aim[s] to place disabled children in the same position they would have occupied but for the school district's violations of IDEA." *Reid ex rel. Reid* v. *Dist. of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005); *see* 20 U.S.C. § 1415(i)(2)(C)(iii). Indeed, the order rejecting their claims acknowledged that's exactly what the parents did seek: "The [parents] seek compensatory education for the District's alleged failure to provide [C.P.] a free appropriate public education."

**[12]** Nevertheless, the district court concluded that the suit was unfounded because the parents "did not identify or offer evidence of any compensatory education services that would benefit [C.P.]" In this, the district court was mistaken. C.P.'s father testified at trial that he "would like compensatory education in the form of additional education for my son . . . whether that entails additional support in schooling in the summer, whether it entails additional schooling or programming over breaks, whether it includes new computer programs that have become available or some technology that has come available or has yet to become available. . . . Something has to be able to make up for three years of not being educated if that is in fact determined to be the case." Had the district court determined that C.P. was denied a FAPE, it could well have provided for additional services to help C.P. make up for lost time, as "it may be a rare case when compensatory education is not appropriate" to remedy an IDEA violation. *Parents of Student W*, 31 F.3d at 1497. Courts have been creative in fashioning the amount and type of compensatory

education services to award. *See, e.g.*, *Ferren C.* v. *Sch. Dist. of Phila.*, 612 F.3d 712, 718-19 (3d Cir. 2010) (court can order school to provide annual IEPs to student who had aged out of a statutory right to a FAPE); *M.S. ex rel. Simchick* v. *Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 324-26 (4th Cir. 2009) (court can order that private school tuition be reimbursed); *Park, ex rel. Park* v. *Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1034 (9th Cir. 2006) (court can order additional training for a child's teachers). Thus, even if the parents were happy with the current IEP, they could reasonably have expected the district court to use its equitable powers to help bring C.P. to the point he would have been, had he received a FAPE all along.

**[13]** That the judge ruled against the parents because he found they had not proved that "additional compensatory education would serve [a] useful purpose," does not render the suit without foundation. We've cautioned that "a district court [should] resist . . . engag[ing] in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *EEOC* v. *Bruno's Restaurant*, 13 F.3d 285, 287 (9th Cir. 1993) (quoting *Christiansburg*, 434 U.S. at 421-22). Here, the parents had a statutory remedy available that would arguably have provided additional educational benefit to C.P., had they prevailed. They made plausible arguments as to why they should prevail; the fact that the arguments were not successful doesn't make them frivolous.

**[14]** Lawyers would be improperly discouraged from taking on potentially meritorious IDEA cases if they risked being saddled with a six-figure judgment for bringing a suit where they have a plausible, though ultimately unsuccessful, argument, as here. *But cf. Dist. of Columbia* v. *Ijeabuonwu*, 631 F. Supp. 2d 101, 105 (D.D.C. 2009) (finding it unreasonable for defendants to continue litigating after case was declared moot, no substantive disputes remained and the school district had offered all important relief sought). Such a procrustean

interpretation of section 1415(i)(3)(B)(i)(II) is inconsistent with the IDEA's objective of "ensur[ing] that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(B); *see also Christiansburg*, 434 U.S. at 422 ("[H]indsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."). Rather, as we held in *Bruno's Restaurant*, so long as the plaintiffs present evidence that, if believed by the fact-finder, would entitle them to relief, the case is per se not frivolous and will not support an award of attorney's fees. 13 F.3d at 290.

[15] *Section 1415(i)(3)(B)(i)(III)*. The district court also erred in holding the parents liable for bringing a suit for an improper purpose. As a matter of law, a non-frivolous claim is never filed for an improper purpose. *Townsend* v. *Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1991) (en banc). It's therefore harder for a school district to collect attorney's fees against parents than against their lawyers: Collecting against parents requires a showing of both frivolousness and an improper purpose, while collecting against their attorneys requires only a showing of frivolousness. This makes sense, since parents are not usually in the position to assess whether a claim is frivolous. Because the parents' action wasn't frivolous, it could not be filed for an improper purpose. *See id.* They shouldn't have to face financial ruin for attempting to vindicate the rights of their disabled child.

[16] In any event, the district court erred in holding that anger is an improper purpose that could justify an award of attorney's fees. Anger is an altogether different motive from those listed in section 1415(i)(3)(B)(i)(III) as improper: "to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." In fact, anger is a legitimate reaction by parties who believe that their rights have been violated or ignored. One of the roles of the adversarial system is to peaceably resolve disputes that give rise to personal animosity by channeling that indignation into a lawful resolution in lieu of

feuding or personal violence. So long as the claim raised is not frivolous, and the litigation is not being pursued in order to achieve an illegitimate objective (such as harassment, delay or imposing unnecessary costs on the opposing party), an award of fees under section 1415(i)(3)(B)(i)(III) is not justified.

[17] *Non-IDEA claims*. As "the vast majority" of the school district's expenses came from litigating the IDEA claim, the non-IDEA claims accounted for only about $14,000 of the fee award. The district court awarded this amount under a variety of fee-shifting statutes. It found that the non-IDEA claims in both the original complaint and in the untimely first amended complaint were without foundation because the parents made insufficient factual allegations, didn't properly exhaust and weren't entitled to a remedy.

[18] As we noted in our discussion of section 1415(i)(3)(B)(i)(II), that the parents couldn't prevail on these claims doesn't render them frivolous. "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Christiansburg*, 434 U.S. at 422. Here, the parents had a reasonable basis for bringing their non-IDEA claims: Those claims could have gained them remedies in addition to the ones to which they would have been entitled, had they prevailed only on their IDEA claim. *See, e.g.*, *Mark H.* v. *Lemahieu*, 513 F.3d 922, 930 (9th Cir. 2008). While they did not prevail, we've already held that bringing the IDEA claim was not frivolous. It follows that bringing claims under related statutes that could have provided additional remedies was also not frivolous.

[19] Moreover, plaintiffs would have had plausible claims under the ADA and the Rehabilitation Act, had they been able to amend their complaint after the district court dismissed the IDEA claim. We know this because we have examined the complaint they provided with their motion to amend. The pro-

posed amended complaint alleges that the school district never told plaintiffs that it "paid for other autistic children to be educated at private schools," and that on one occasion, C.P. "was not permitted to attend school with other children." While the district court was well within its discretion in denying the parents leave to amend and dismissing their case, the parents' argument for leave to amend wasn't frivolous. *See Gibson* v. *Office of Att'y Gen., Cal.*, 561 F.3d 920, 929 (9th Cir. 2009). The parents therefore had a reasonable basis for including their non-IDEA claims in the complaint. The district court abused its discretion by finding these claims groundless and awarding fees to the school district. That decision was based on the type of "*post hoc* reasoning" that the Supreme Court forbids, and undercuts Congress's effort to promote vigorous enforcement of civil rights. *Christiansburg*, 434 U.S. at 421-22.

**[20]** *Fees on Appeal.* Because the parents aren't entitled to relief on the merits of their IDEA claim, they aren't entitled to fees on appeal. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I) (permitting an award of fees to a "prevailing party"). We decline their invitation to impose a sanction under 28 U.S.C. § 1927, since there's no evidence that the school district's lawyers acted recklessly or in bad faith. *See Cline* v. *Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000).

**AFFIRMED in part and REVERSED in part. No costs.**