REINHARDT, Circuit Judge,
concurring in part and dissenting in part:
This case is about a mother who engaged in IDEA litigation principally to secure an independent educational evaluation for occupational therapy for her child, who indisputably has special education needs. In the course of litigating her IDEA claim, the mother alleged that her child’s school district violated not only the Individuals with Disabilities Education Act (IDEA), but also the Rehabilitation Act, the Americans with Disabilities Act (ADA), and § 1983 by improperly threatening to seek sanctions against her and her counsel if they appealed the administrative denial of the child’s IDEA claims.
At the conclusion of the mother’s unsuccessful attempt to obtain an independent educational evaluation in the district court, the district judge of his own accord invited the school district to file a motion for attorney’s fees. The district judge — expressing a “degree of frustration” with the child’s mother and her counsel, Maj. Op. at 1249 • — then awarded the school district nearly $100,000 in fees and costs, finding not only that each of the mother’s claims was frivolous, but that they were brought for improper purposes — “namely, to ‘harass,’ ‘cause unnecessary delay,’ and ‘needlessly increase the costs of litigation’ ” (citing 20 U.S.C. § 1415(i)(3)(B)(i)(IID). Under the IDEA, the latter finding exposed the mother herself to potential liability.
In almost all respects, the majority correctly finds that the district court was wrong. Specifically, the majority holds that the claims under the IDEA and the Rehabilitation Act were not frivolous, and it holds that none of the claims was brought for any improper purpose. To that extent, I agree completely with the *1251 majority. My colleagues, however, perhaps out of a desire to give something to both sides, partially affirm the district court’s decision by holding that the claims under the ADA and § 1983 were frivolous, although those claims were based entirely on the very same facts that underlay the non-frivolous claim under the Rehabilitation Act. This holding represents more than what some might call legalistic arglebargle. To hold that when a litigant has a non-frivolous claim and pleads it under the wrong legal label as well as under the right one, the pleadings under the wrong statutes are frivolous and warrant the imposition of sanctions runs contrary to the spirit and purpose of the IDEA. Such sanctions, if upheld, would not only penalize both civil rights litigants and lawyers for good faith efforts to correct perceived violations of statutes designed to help some of those most in need of help from our judiciary, but would chill the filing of civil rights — here, disability — claims in the first instance. Although the majority opinion should ultimately result in a very small award for the additional legal work necessary to obtain the dismissal of the ADA and § 1983 claims, the majority’s decision to impose sanctions on a small special education law firm for mere overpleading is important, as it creates extremely bad law. I strongly disagree that the plaintiffs filing of her ADA and § 1983 claims justifies any sanctions at all, and I dissent from that portion of the majority opinion.
Under the IDEA, a prevailing defendant agency or district can recover fees only in “rare circumstances.” R.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117, 1124 (9th Cir.2011). Such circumstances generally involve conduct so offensive to the fair and honorable practice of law that it merits sanctioning of the offending attorneys. An attorney who files a legitimate action for a client does not exceed the bounds of honorable lawyering when he adds to the complaint an allegation that the same conduct violates related statutes as well, whether doing so results from a disagreement with prior case law, the offering of a novel though erroneous legal theory, or an inability to thoroughly research every possible legal theory before filing the complaint. Although law firms with thousands of attorneys may be able to fully research every legal claim they assert, a small, under-staffed, and under-paid law firm seeking to protect the rights of children with disabilities should not be held to so rigorous a standard. As a lawyer with obligations to his client, counsel from such a firm is following his professional duties far better by possibly overpleading the number of statutes the defendant’s unlawful actions may violate than by underpleading them. The former does far less harm to the defendant who may readily have the extraneous counts stricken than the latter does to the plaintiff who may lose a legitimate claim should the lawyer fail to include all potentially applicable statutes. Counsel’s action of referring to too many statutes, rather than too few, is not the type of “rare circumstance” that warrants the sanctioning of a lawyer asserting a legitimate IDEA claim.
That is particularly true in this case, as counsel “may have [had] an entirely reasonable ground for bringing” claims under § 1983 and the ADA, despite the fact that “the law ... appealed] questionable or unfavorable at the outset.” Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The damages claim under § 1983, for example, failed because we had held almost a quarter of a century ago in Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 254 (9th Cir.1992), that a school district in California is an arm of the state for purposes of Eleventh Amendment immunity. *1252 Although the rule of Belanger is undoubtedly presently good law in our court as to the immunity of California school districts, “the Supreme Court and the vast majority of appellate courts that have considered the issue [as it relates to school districts in other states] have found that school districts and school boards are not entitled to Eleventh Amendment immunity.” Lightfoot v. Henry Cty. Sch. Dist., 771 F.3d 764, 768-69 (11th Cir.2014). It would not be improper or surprising for a plaintiff to question whether Belanger should remain good law by raising that argument for purposes of asserting it before an en banc court or even in order to preserve the possibility of seeking Supreme Court review. See Davis v. Electronic Arts Inc., 775 F.3d 1172, 1181 n. 7 (9th Cir.2015). However, by sanctioning the attorney in this case because the plaintiffs § 1983 claim was barred by Belanger, the majority severely punishes the exercise of that legitimate right and violates the “rare circumstances” rule.
The plaintiffs ADA claim, moreover, was rejected by the district court only because, in its view, the statutory text under which counsel asserted that claim was not expansive enough to support the plaintiffs argument. As an initial matter, I disagree with the majority’s failure to treat this claim in the same manner as it did the Rehabilitation Act claim, which the majority correctly determined was not frivolous. We have held that “[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act,” Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n. 11 (9th Cir.1999), and the majority provides no reason not to follow that rule in this case. Even if the majority were correct, however, that the statutory text under which counsel brought the ADA claim was not expansive enough to support it, that would not be a sufficient reason to find the claim frivolous. I need not recount the number of times that a federal court has read statutory text as holding a meaning that its ordinary language would not appear to bear. See, e.g., Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 76, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002) (holding that the ADA’s direct-threat defense may apply not only to “other individuals in the. workplace,” as the statute states, but to the disabled individual himself). The fact that the plaintiffs arguments were not successful in this case “doesn’t make them frivolous.” R.P., 631 F.3d at 1126. More fundamentally, however, it is entirely reasonable for practitioners in a small law firm (or even counsel in a large firm) to think that the Americans with Disabilities Act might apply in a case concerning a child with disabilities and to set forth that contention in a complaint. Thinking so, right or wrong, is not a ground for sanctions.
The arguments against sanctioning plaintiffs counsel for bringing the mother’s legitimate intimidation claim under what the majority believes to be the wrong statutes— § 1983 and the ADA' — -as well as under what it holds to be the right one — the Rehabilitation Act — are especially strong considering the minimal costs that the defendant incurred “solely by virtue of the need to defend against” these claims. Harris v. Maricopa Cnty., 631 F.3d 963, 971 (9th Cir.2011). As the majority opinion correctly states, a court may grant attorney’s fees to the defendant “only for costs that the defendant would not have incurred but for the frivolous claims.” Fox v. Vice, — U.S. —, 131 S.Ct. 2205, 2211, 180 L.Ed.2d 45 (2011). In this case, it is impossible for those costs to be more than a minimal amount, if any. All of the time and effort that the defendant expended defending against the substance of the plaintiffs § 1983 and ADA *1253 claims would have been expended even if the plaintiff had not brought those claims because the § 1983 and ADA claims were based on the very same facts as the non-frivolous Rehabilitation Act claim. The only costs the defendant theoretically incurred that it would not have but for the § 1983 and ADA claims are costs relating to asserting that Belanger barred the § 1983 claim and costs relating to asserting that the ADA did not apply in this case. The former required making an argument that California school districts surely are prepared to make in any § 1983 case, and the latter basically required reproducing the statutory text.
Although the award in this case should, therefore, be extremely low, the majority nevertheless should have heeded the warning that we offered in R.P.:
Lawyers would be improperly discouraged from taking on potentially meritorious IDEA cases if they risked being saddled with a six-figure judgment for bringing a suit where they have a plausible, though ultimately unsuccessful argument, as here. Such, a procrustean interpretation of section 1415(i)(3)(B)(i)(II) is inconsistent with the IDEA’S objective of “ensuring] that the rights of children with disabilities and parents of such children are protected.”
R.P., 631 F.3d at 1126 (quoting 20 U.S.C. § 1400(d)(1)(B)) (citation omitted). By punishing a small firm for arguing a non-frivolous claim under the wrong sections of the United States Code, the precedent established by the majority opinion will discourage disability lawyers from taking on the very cases that the IDEA sought to encourage. In light of the majority’s opinion, small firms will have to weigh the risk that they will incur a costly sanction for a minor legal error intended to benefit a disabled child. This despite the fact that IDEA practitioners — indeed, nearly all civil rights practitioners — rarely have the time or the staff to handle the volume of cases for which they are responsible with the same attention or devotion of resources as their counterparts who represent the defense.
We must be sensitive to imposing sanctions in IDEA cases, as it is critical that we keep the federal courts open to IDEA claims, counsel, and parties. Indeed, it is the clients with IDEA complaints who in the end will suffer if lawyers become reluctant to bring such cases before us. To further the purpose of the IDEA, we must allow counsel for IDEA plaintiffs the leeway to handle their cases in a practical manner. The majority, unintentionally, fails to abide by this rule. In doing so, it sets a precedent that is at odds with the core purpose of the IDEA.
There is an additional issue in this case, which is governed by the same principles we have discussed above: should we affirm the sanctioning of plaintiffs counsel for reasserting the ADA and § 1983 claims in an amended complaint after those claims had previously been dismissed with prejudice? Here, the circumstances provide the answer. The facts show that counsel agreed to dismiss those claims by stipulation almost immediately after opposing counsel objected to their inclusion in the amended complaint. In the Rule 11 context, this fact would end our inquiry; we would not sanction plaintiffs counsel. See Fed.R.Civ.P. 11 advisory committee’s notes to 1993 amends, (explaining that Rule 11 “generally provid[es] protection against sanctions if [attorneys] withdraw or correct contentions after a potential violation is called to their attention”); Barber v. Miller, 146 F.3d 707, 710 (9th Cir.1998) (explaining that the purpose of Rule ll’s “safe harbor” provision is to allow counsel to withdraw claims in order to “protect[ ] *1254 himself totally from sanctions”). Although the IDEA does not contain the “safe harbor” provided in Federal Rule of Civil Procedure 11(c)(2), we have held that — in light of the legislative history of the IDEA — we must in the IDEA context rely on “Rule 11 cases to determine whether the district court abused its discretion in awarding attorney’s fees to the school district.” R.P., 631 F.3d at 1125. Our inquiry here, therefore, must similarly end with the fact that the ADA and § 1983 claims were dismissed by stipulation of the parties. Otherwise, in the IDEA context we would encounter the very issue that motivated the adoption of a “safe harbor” in Rule 11 — counsel would be “reluctant to abandon a questionable contention lest that be viewed as evidence” that his contention was frivolous. Fed.R.Civ.P. 11 advisory committee’s notes to 1993 amends. The majority’s holding to the contrary creates an unnecessary incongruity between the IDEA and Rule 11 without any basis for doing so.
Moreover, whether or not plaintiffs' counsel’s actions constituted a technical violation of our pleading rules, I would hold that they do not warrant sanctions. We should sanction plaintiffs counsel in an IDEA case for continuing to litigate a claim that was. dismissed with prejudice only when the continued litigation was deliberate. In this case, the school district bore “the burden of establishing entitlement to an award.” Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). It made no showing, however, that plaintiffs counsel’s renewed litigation of the dismissed claims was intentional. In fact, the evidence is to the contrary. Although the plaintiff reasserted her ADA and § 1983 claims after they were dismissed with prejudice, the parties dismissed them by stipulation almost immediately after the defendant filed its motion to dismiss. Moreover, the plaintiffs reassertion of these dismissed claims did not create any significant additional work for defense counsel, who needed only to state that the claims had already been dismissed with prejudice.. Given that the reassertion of the failed claims did little or no harm to the defendant and could have caused little or no expenditure of defendant’s counsel’s time and energy, I would not sanction disability rights attorneys for what was, in all likelihood, a simple mistake by counsel or another employee of an understaffed law firm — a mistake that it corrected almost immediately by stipulation.
Due to the minimal costs that the defendant incurred “solely by virtue of the need to defend against” the claims that the majority erroneously finds to be frivolous, Harris, 631 F.3d at 971, I fully expect the award in this case to be nominal at most. The majority opinion nevertheless creates an unfortunate precedent. I would hope that on rehearing the majority, which has otherwise issued an excellent opinion that is fully consistent with the letter and spirit of the IDEA, will reconsider and delete the few offending paragraphs affirming sanctions — paragraphs that sound so jarring and contrary a note to the rest of its disposition.