Opinion by Judge WARDLAW; Partial Concurrence and Partial Dissent by Judge REINHARDT.
ORDER
The opinion filed on March 2, 2015 [779 F.3d 956] is hereby amended, and an amended opinion is filed concurrently with this order.
With that amendment, Judges Wardlaw and Callahan have voted. to deny, and Judge Reinhardt has voted to grant, appellants’ petition for rehearing. The panel has voted to reject the suggestion for rehearing en banc.
The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.
Thus, the petition for rehearing is denied and the suggestion for rehearing en banc is rejected. No further petitions for rehearing or for rehearing en banc will be entertained. The mandate shall issue forthwith.
IT IS SO ORDERED.
OPINION
WARDLAW, Circuit Judge:
C.W. appeals the district court’s award of attorney’s fees and costs to Capistrano Unified School District, (“the District”), as the prevailing defendant in an action alleging violations of the Individuals with Disabilities Education Act (“IDEA”). In addition to the IDEA claims, attorneys for C.W. also claimed violations of the Americans with Disabilities Act (“ADA”), Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983, based on a claim of retaliation arising from a letter threatening sanctions sent by the District’s counsel should C.W.’s parent (“K.S.”) continue to pursue this appeal. Because we agree with the district court that the ADA and § 1983 claims are frivolous, we affirm the district court to the extent it awarded attorney’s fees and costs for representation relating to those claims. We disagree with the district court, however, that plaintiffs IDEA and Rehabilitation Act claims were frivolous and/or brought for an improper purpose, and we therefore reverse the district court to the extent it awarded attorney’s fees and costs related to the litigation of those claims.
I.
A.
Congress enacted the IDEA “to ensure that all children with disabilities have available to them a free and appropriate public education” and “to ensure that the rights of children with disabilities and parents of such children are protected.” 20 U.S.C. §§ 1400(d)(1)(A) — (B). “The-statute sets forth procedures for resolving disputes in a manner that, in the Act’s express terms, contemplates parents will be the parties bringing the administrative complaints.” Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 527, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007). The IDEA relies in numerous ways on the involvement of parents in the process of developing Individualized Education Programs for students with special needs, and provides a detailed scheme for parents to pursue remedies when they believe that their child has been deprived of a free and appropriate education. Since its inception, the IDEA, like most civil rights statutes, has allowed a prevailing plaintiff to seek attorney’s fees and costs. *1241 See 20 U.S.C. § 1415(i)(3)(B)(i)(I); see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 301-02, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006) (noting the “virtually identical [ ] wording” of § 1415(i)(3)(B). and 42 U.S.C. § 1988). In 2004, Congress amended 20 U.S.C. § 1415(i)(3)(B), to allow a prevailing defendant in an IDEA case to seek fees against the attorneys of a parent or against the parent himself if the claims alleged were frivolous or brought for an improper purpose. See P.L. No. 108-446, December 3, 2004, 118 Stat. 2647.
B.
At the time of the disputed occupational therapy assessment in this case, C.W. was 11-years old. C.W. was and continues to be eligible for special education services under the eligibility category of “Other Health Impairment” because she has cerebral palsy, a ventriculoperitoneal shunt, and a heart murmur. C.W. also has low cognitive ability. C.W. was in a special day class at Crown Valley Elementary School within the District.
The District performed its legally required triennial assessment of C.W. in 2010. The multidisciplinary team recommended that C.W. remain eligible for special education and related services because “she exhibits a severe health disorder which adversely affects educational performance.” Following an initial Individualized Education Program[1] meeting in October 2010, K.S. consented to an occupational therapy assessment for C.W. This assessment of C.W. in areas of gross and fine motor development, was conducted by Rebecca Hirchag, a licensed occupational therapist (“OT”). The OT assessment included a review of medical and educational records, a teacher interview, a parent interview, naturalistic observations of performance in an educational setting, and clinical observations, as well as five different standardized assessment tools. The OT report concluded:
Assessment revealed fine motor precision and bilateral integration skills in the average range when compared to typically developing peers her same age. Scores for fine motor integration and upper limb coordination were slightly below average however in alignment with her academic ability. Manual dexterity scores were impacted by time. Please see accommodations in the chart below to assist [C.W.] in the classroom .... In the classroom she is focused and attentive, she is processing sensory information with regards to her access of educational environment.
Hirchag made several recommendations for goals, modifications, or accommodations based on C.W.’s weaknesses in manual dexterity, registration and sensitivity, *1242 remembering content during written language assignments, spelling, and desk organization, but she did not recommend whether any direct OT services were needed. The IEP,- informed by the OT assessment, recommended a one hour-monthly collaboration between an OT therapist and C.W.’s teacher to evaluate strategies for going forward, as well as two 30-minute individual OT consults per year.
Hirchag presented the OT assessment at a January 12, 2011 IEP meeting, and K.S. responded that it was “stupid.” K.S. also expressed shock that the OT assessment concluded that C.W. was able to appropriately cut a shape from paper, and said that at home, C.W. holds scissors incorrectly.
On January 25, 2011, K.S., pursuant to California law, requested an independent educational evaluation for occupational therapy based on her disagreement with the occupational therapy portion of the January 2011 IEP. See Cal. Educ.Code § 56329(b) (granting parents the “right to obtain, at public expense, an independent educational assessment of the pupil from qualified specialists ... if the parent or guardian disagrees with an assessment obtained by the public education agency”); 34 C.F.R. § 300.502(a) (same). K.S. refused to consent to the OT portion of the IEP because the District failed to include in C.W.’s January 2011 IEP all of the OT report’s recommended accommodations. The letter was signed by attorney Jennifer Guze Campbell of the Special Education Law Firm.
On February 23, 2011, the District denied the request for an independent educational evaluation at public expense. The District filed its complaint initiating a due process hearing before an Administrative Law Judge (“ALJ”) on March 4, 2011.[2]
C.
The Due Process hearing concerned two issues: (1) whether the OT assessment was appropriate; and whether the District committed a procedural IDEA violation by delaying unnecessarily in filing its due process complaint. The ALJ reviewed the records and took testimony, principally from Hirchag. The ALJ concluded that the OT assessment was administered properly pursuant to the correct test manual and in compliance with the statutory requirements. The ALJ also concluded that the forty days between the IEE request and the filing of the Due Process complaint was not unnecessary delay.
Because the ALJ concluded that the District’s OT assessment was appropriate, C.W. remained able to obtain an independent assessment, but not at a public expense. KS.’s remedy was to appeal the ALJ decision in federal district court. On July 1, 2011, K.S.’s attorney wrote to the District indicating that K.S. would forego an appeal if the District agreed to fund the IEE for occupational therapy and pay $12,500 in attorney’s fees and costs to her attorneys, The Special Education Law Firm. Counsel noted that: “legal fees will continue to increase as this matter proceeds to Federal litigation if the parties do *1243 not achieve a settlement agreement.” The District’s attorney responded in a letter dated July 14, 2011:
Your July 1, 2011 correspondence cements your office’s pattern of litigating, and threatening to litigate, nonexistent violations ... As you are aware, continued litigation as to the appropriateness of the District’s 2011 occupational therapy assessment is frivolous.... Accordingly, the District reserves the right to seeks [sic] sanctions against you and your client if the most recent administrative decision is appealed.
D.
On August 3, 2011, K.S. filed an appeal of the ALJ’s decision in federal district court, adding claims for violations of the intimidation clause of the Americans with Disabilities Act, 42 U.S.C. § 12203(b); 42 U.S.C. § 1983 for retaliation in violation of KS.’s First Amendment rights; and § 504 of the Rehabilitation Act of 1973. Each of these additional claims was based on the theory that the District’s July 14, 2001 letter was an attempt to intimidate K.S. from pursuing her legal right to appeal the ALJ decision.
The District moved under Federal Rule of Civil Procedure 12(b)(6) for dismissal of the ADA, § 1983, and § 504 claims. The district court dismissed the ADA claim with prejudice; dismissed the § 1983 claim with prejudice, except to the extent injunctive relief was sought; and dismissed the § 504 claim because, as pled, it failed to meet the standards articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), but granted K.S. leave to amend the § 504 claim because an amendment might not be futile.
On January 13, 2012, K.S. filed an amended complaint alleging the § 1983 and ADA claims once more and pleading the § 504 claim with more particularity. In response, the District filed a second motion to dismiss on January 27, 2012, and on January 31, the parties stipulated to dismiss the § 1983 and ADA claims with prejudice. The district court dismissed the § 504 claim with prejudice on March 23, 2012.
On July 2, 2012, K.S. moved for summary judgment, arguing the ALJ incorrectly ruled on the adequacy of the OT assessment because it failed to recommend that C.W. may need special education and related services and that the District had not unnecessarily delayed in filing the due process complaint.
On August 3, 2012, the district court affirmed the ALJ’s decision, finding that it “eontain[ed] no factual errors and was thorough and careful,” and concluding that the disputed occupational therapy report did not violate the IDEA and the District did not unnecessarily delay its due process complaint. The court further denied K.S.’s request for attorney’s fees and invited the District to file a request for attorney’s fees because the “bases for appeal [were] frivolous.”
The District accepted the court’s invitation and was awarded $94,602.34 in attorney’s fees and $2,058.21 in costs. The district court found that each of the claims was “frivolous, unreasonable, and without foundation.” Further, the court concluded that these claims were brought by K.S. for the improper purpose of “harassment, unnecessary delay, and needlessly increasing litigation costs,” exposing K.S. to potential personal liability for the fees.
II,
We review for abuse of discretion a district court’s award of attorney’s fees to a prevailing defendant under the fee *1244 provisions of the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III). R.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117, 1125 (9th Cir.2011). “A district court abuses its discretion when it awards fees based on an inaccurate view of the law or a clearly erroneous finding of fact.” Benton v. Or. Student Assistance Comm’n, 421 F.3d 901, 904 (9th Cir.2005) (internal quotation marks and citation omitted). In reviewing attorney’s fees awards in other contexts, we “employ a two-step inquiry to determine whether a district court abused its discretion in applying law to facts in a manner that is ‘essentially factual’ ” United States v. Capener, 608 F.3d 392, 400 (9th Cir.2010) (internal citation omitted).
First, we determine de novo whether the trial court identified the correct legal rule to apply to the relief requested. If it did, we then evaluate the trial court’s application of this legal standard to the facts of the case and may reverse only if its application was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.
Id. (internal citations and quotation marks omitted). Moreover, “[a]ny elements of legal analysis which figure in the district court’s decision are ... subject to de novo review.” Benton, 421 F.3d at 904.
A.
Section 1415 allows prevailing defendants in IDEA cases to recover fees from the attorney of a parent and from a parent in certain rare circumstances. A prevailing school district may recover attorney’s fees against the parent’s attorney where the complaint is “frivolous, unreasonable, or without foundation” (the “frivolous prong”). 20 U.S.C. § 1415(i)(3)(B)(i)(II). Additionally, attorney’s fees may be awarded against a parent or her attorney, “if the parent’s complaint or subsequent cause of action was presented for any improper purpose” (the “improper purpose prong”). 20 U.S.C. § 1415(i)(3)(B)(i)(III). The statute gives examples of improper purposes, including “to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.” Id.
We have previously noted that there is little case law governing fee awards to prevailing defendants under the IDEA. R.P., 631 F.3d at 1124. In R.P., though we rejected the autistic child’s claim that he was denied a fair and appropriate education in violation of the IDEA, we reversed the district court’s award of attorney’s fees to the school district because it applied an improper and unsupported legal standard. There, we concluded:
[T]he language of the IDEA’S fee-shifting statute is nearly identical to 42 U.S.C. § 1988, the general fee-shifting provision for federal civil rights cases. And the IDEA’S language granting fees to prevailing defendants is nearly identical to the standard the Supreme Court developed in Christiansburg Garment Co. v. EEOC, 434 U.S. 412, ... (1978), which is now the standard for awarding fees to prevailing defendants in civil rights cases.
Id. at 1124-25 (internal quotation marks and citations omitted). We explained that the legislative history of- § 1415 demonstrates that Congress fashioned the first part of the law, which allows defendants to recover if a claim is frivolous, after the Christiansburg standard. The second part of the law, § 1415(i)(3)(B)(i)(III), which allows a prevailing party to recover against the parents or the parents’ attorneys in the event that a claim is brought for an improper purpose, “comes from another well-established Federal law: Federal Rule of Civil Procedure 11.” R.P., 631 F.3d at 1125 (quoting 150 Cong. Rec. S5250, S5349 (daily ed. May 12, 2004) *1245 (statement of Sen. Gregg)). We therefore “rely on Christiansburg and Rule 11 cases to determine whether the district court abused its discretion in awarding attorney’s fees to the school district against the parents and their lawyer.” Id.
B. Frivolousness
1. IDEA Claims
In assessing the frivolousness of the IDEA claims, the district court abused its discretion by failing to properly apply the Christiansburg standard. R.P., 631 F.3d at 1124-25. When the correct legal standard is applied, it is clear that the claims were not frivolous within the meaning of the statute.
Under Christiansburg, a prevailing defendant is entitled to attorney’s fees only if plaintiffs “claim was frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so.” 434 U.S. at 422, 98 S.Ct. 694. In considering what constitutes a claim that is frivolous, unreasonable or groundless, “it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.” Id. at 421-22, 98 S.Ct. 694. And, “if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney’s fees incurred by the defense.” Id. at 422, 98 S.Ct. 694.
Applying the Christiansburg frivolousness standard, we have held that “[a] case may be deemed frivolous only when the result is obvious or the ... arguments of error are wholly without merit.” Karam v. City of Burbank, 352 F.3d 1188, 1195 (9th Cir.2003) (internal citation and quotation marks omitted). Moreover, when there is very little case law on point and a claim raises a novel question, the claim is much less likely to be considered frivolous. Id.
To the extent that the district court implied that the IDEA claims were frivolous at the administrative hearing stage, it erred.[3] First, the District, not K.S., filed the due process complaint after it decided not to address KS.’s two concerns regarding the OT assessment that was provided. Second, the ALJ’s inquiry focused narrowly on “[w]hether the District’s January 5, 2011 occupational therapy (OT) assessment was appropriate.” K.S. contended that the OT assessment was not appropriate because: (1) The testing used and the scoring of at least one of the OT tests underlying the OT assessment was inappropriate; and (2) the report failed to comply with statutory requirements because the report omits the assessor’s conclusion about whether C.W. actually required special education services. The ALJ conducted a thorough review of these claims, taking testimony from the OT assessor, and ultimately rejected KS.’s arguments. Nothing in the ALJ’s decision hints that these claims were frivolous — indeed, the ALJ’s careful analysis, findings of fact, and conclusions of law indicate the seriousness of KS.’s claims.
*1246 Nor were the IDEA claims frivolous as the litigation continued. In the motion for summary judgment before the district court, K.S. argued that the requirement of California Education Code § 56327 — that a written assessment of a student include a statement of whether the pupil may need special education and related services— was not met in this case. K.S. disagreed with the report because it did not adequately address C.W.’s then-current situation. Specifically, it was undisputed that the OT report did not include any specific recommendation and evinced concern that the subsequently recommended collaborative OT would merely take the form of ad hoc informal conversations between the OT therapist and C.W.’s teacher rather than any actual occupational therapy.
K.S.’s claims relating to the OT assessment were poorly plead and argued and she ultimately lost; however, this does not mean they were frivolous. As we said in R.P., 631 F.3d at 1126, “[ljawyers would be improperly discouraged from taking on potentially meritorious IDEA cases if they risked being saddled with a six-figure judgment for bringing a suit where they have a plausible, though ultimately unsuccessful, argument, as here.” There was some basis for KS.’s belief that the OT assessment was inappropriate, some basis for concluding that the report failed to meet the procedural requirements of California Education Code § 56327(a-b), and some basis for believing that the IEP failed to provide C.W. with a free and public education (“FAPE”). In its decision on the merits, the district court concluded that because the District did not “dispute [C.W.’s] eligibility at the time the Disputed Report was written,” the procedural violation alleged is “especially frivolous.” This conclusion misapprehended the fact that the OT assessment itself could be read to violate California Education Code § 56327, which requires anyone who assesses the pupil to prepare a written report which includes “[w]hether the pupil may need special education and related services,” and “[t]he basis for making the determination.” In reviewing the OT assessment, Hirchag never states whether C.W. is or is not eligible for OT services and on what basis. While the district court appropriately notes that the OT assessment mentions that C.W. was eligible for special education services, § 56327 by its own terms also states that the report should note whether the pupil may need “related services.” Given the dearth of cases citing or interpreting § 56327’s requirements,[4] it was hardly a foregone conclusion that a challenge to the OT assessment on the basis of its failure to include a section recommending what OT services should be provided to C.W. or seeking an independent evaluation to ascertain which services should be provided, could not prevail. See Karam, 352 F.3d at 1195 (“A case is less likely to be considered frivolous when there is very little case law directly apposite.”) (citation and internal quotation marks omitted). As in Karam, “[t]hese circumstances furnish some basis, albeit somewhat tenuous,” 352 F.3d at 1196, for the conclusion that there was some factual basis for C.W.’s claim. The factual basis for the claim in concert with the lack of apposite case-law demonstrates that this claim is not frivolous.
In its analysis of the frivolousness of the 41-day “unnecessary delay” claim, the district court also failed to cite any case law setting forth the standard for frivolousness. Under Christiansburg, KS.’s claim that the 41-day delay between parent’s request for an IEE and the District filing *1247 for a due process hearing was “unnecessary” in violation of 34 C.F.R. § 300.502(b)(2) was not frivolous. Although other courts have held that periods of time longer than 41-days do not constitute an “unnecessary delay,” those same courts have highlighted the fact-specific inquiry necessary to determine whether the delay violated the Regulation. See, e.g., J.P. v. Ripon Unified Sch. Dist., No. 2:07-cv-02084-MCE-DAD, 2009 WL 1034993, at *7-8 (E.D.Cal. Apr. 15, 2009).
2. Retaliation-Based Claims
The district court did not discuss Christiansburg in concluding that the three retaliation-based claims were frivolous. Nonetheless, our review of these claims under the proper legal framework demonstrates that two of the three retaliation-based claims were frivolous, and we affirm the district court’s finding as to these claims.[5]
The ADA intimidation claim and the § 1983 claim lack any legal foundation and “the result is obvious.” Karam, 352 F.3d at 1195. The ADA intimidation claim filed under 42 U.S.C. § 12203(b) had an outcome that was clear at the time it was filed. Section 12203(b) states: “It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.” (emphasis added). By its own terms, protection under the ADA against intimidation does not extend to a plaintiffs' attempts to exercise rights granted or protected by the IDEA — the basis of KS.’s claim in this case. See Morse v. N. Coast Opportunities, Inc., 118 F.3d 1338, 1343 (9th Cir.1997) (“Because [Plaintiffs] § 1983 complaint against [Defendant] is completely barred by the terms of the statute, we find that her claim is ‘unreasonable’ and ‘merit-less.’ ”). The district court concluded as much in dismissing the claim with prejudice. Despite this dismissal, KS.’s attorneys pled the same claim in their First Amended Complaint requiring the District to respond once again to this frivolous claim.[6]
The § 1983 claim seeking monetary damages and injunctive relief is likewise frivolous, its outcome predetermined by a review of relevant law. It is well-established that a school district cannot be sued for damages under § 1983. Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 254 (9th Cir.1992) (holding that in Califor *1248 nia, school districts are state agencies for purposes of Eleventh Amendment immunity, and concluding that school districts cannot be liable for damages under § 1983). The district court dismissed this claim with prejudice, except insofar as K.S. sought some sort of injunctive relief against the district. The request for injunctive relief, however, also is frivolous because K.S. failed to indicate what she sought to enjoin or what injunctive relief would be possible in this case. See Hudson v. Moore Bus. Forms, Inc., 836 F.2d 1156, 1163 (9th Cir.1987) (“[FJailure to justify the basis for the [damages sought] only serve[s] to support the district court’s conclusion that the damage claims were frivolous and brought to harass.”). Finally, despite the district court’s dismissal with prejudice of this claim, K.S. reasserted the § 1983 claim in her amended complaint, including a request for damages.[7]
The final retaliation-related claim based on § 504 of the Rehabilitation Act of 1973, in contrast, is not frivolous. Although the district court ultimately granted the District’s Rule 12(b)(6) motion to dismiss, it did so after careful consideration, ultimately concluding that “the specific facts of this case would not dissuade a reasonable person from engaging in a protected activity.” As the district court’s own reasoning made clear, “[K.S.] presented] evidence that, if believed by the fact-finder, would [have] entitle[d] [her] to relief.” R.P., 631 F.3d at 1126. Under such circumstances, “the case is per se not frivolous and will not support an award of attorney’s fees.” Id. Moreover, although K.S. did not ultimately prevail on this case, dismissal under Rule 12(b)(6) is not the same as the standard for frivolousness. See, e.g., Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (discussing at length the difference between failure to state a claim under Rule 12(b)(6) and a finding of frivolousness).
C. Improper Purpose
The district court also concluded that K.S.’s claims were brought for an improper purpose, thus exposing K.S. to liability for attorney’s fees—an extreme result that not even the District sought.[8] A finding of frivolousness, without a finding of improper purpose, allows a school district to recover fees from the attorneys, not the parents. See 20 U.S.C. § 1415(i)(3)(B)(i)(III). “It’s therefore harder for a school district to collect attorney’s fees against parents than against their lawyers: Collecting against parents requires a showing of both frivolousness and an improper purpose, while collecting against their attorneys requires only a showing of frivolousness. This makes sense, since parents are not usually in the position to assess whether a claim is frivolous.” R.P., 631 F.3d at 1126.
We have held, as a matter of law, that “a non-frivolous claim is never filed for an improper purpose.” Id. Therefore, we consider only whether the § 1983 and ADA claims were brought for an improper purpose. Federal Rule of Civil Procedure 11(b) governs our analysis. See id. at 1125. We have recognized that under Rule 11(b)(1), “[a]n improper purpose is a purpose to ‘harass or to cause unnecessary delay or needless increase in the cost of litigation.’ ” G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1110 (9th Cir.2003) (quoting Rule 11(b)(1)). An improper purpose “is ‘tested by objective standards,’ ” *1249 id. (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 n. 9 (9th Cir.1986)), and may be found where “a motion or paper, other than a complaint, is filed in the context of a persistent pattern of clearly abusive litigation activity.” Aetna Life Ins. Co. v. Alla Med. Servs. Inc., 855 F.2d 1470, 1476 (9th Cir.1988).
The district court concluded that K.S. demonstrated her improper purpose by her “attempt to extort fees from District to which Mother was not legally entitled in exchange for Mother foregoing an appeal.” The district court stated: “In short, Mother’s offer to ransom her child’s IDEA appeal in exchange for money to which her non-attorney advocate was not entitled shows that the purpose of this appeal was not to vindicate the rights of her disabled child.” There is no basis in the record for this finding.
First, a reading of the terms of the settlement offer reveals no attempt by K.S. to “ransom” the appeal in exchange for any improper gain. In that settlement offer, K.S. sought both the District’s funding of an IEE and the attorney’s fees and costs incurred by the Special Education Law Firm. Her settlement offer — clearly contingent upon her child receiving the IEE that K.S. believed C.W. deserved— cannot be characterized as an effort to improperly extort funds.
Second, from the start, all K.S. sought was a proper OT recommendation for her child. When the District refused to provide the requested recommendation, she defended against the District’s due process complaint, and then, prior to appealing the adverse decision, provided, through the settlement offer, an option to avoid further litigation should the District agree to fund the IEE that she sought for C.W. When the District refused to settle the dispute, K.S. appealed. The record fails to reflect the one-sided effort to “unnecessarily increase the litigation costs incurred by District until it acquiesced to lining the pockets of her non-attorney advocate” described by the district court. Nor do the July 2011 letters counsel exchanged reflect “clearly abusive litigation activity”; they were, rather, a sideshow by overzealous advocates. Aetna Life Ins., 855 F.2d at 1476.
Furthermore, the district court’s order shows a degree of frustration with K.S. and her counsel. (“Finally, Mother’s latest salvo against this Court is entirely consistent with her strategy throughout this appeal of casting unfounded aspersions on the expertise or reasoning of others to deflect from her own shortcomings.”) District Court’s Order, p. 14. To the extent that the district court’s frustration with K.S. and counsel colored its legal conclusions that these claims were brought for an improper purpose, this was error. As already discussed, no evidence supports an alleged improper purpose. Instead, the record compels the conclusion that K.S. was simply attempting to “vindicate the rights of [her] disabled child.”[9] R.P., 631 F.3d at 1127. K.S.’s steadfast determination to ensure that her child received the appropriate OT is not an improper purpose justifying an award of attorney’s fees. Indeed, we have made clear that “anger is a legitimate reaction by parties who believe that their rights have been violated or ignored.” Id. at 1127.
III.
Where a plaintiff has asserted both frivolous and non-frivolous claims, a *1250 prevailing defendant may recover attorney’s fees under § 1988 for the time attributable to defending against solely the frivolous claims. Fox v. Vice, — U.S. —, 131 S.Ct. 2205, 2214, 180 L.Ed.2d 45 (2011). We have held that, “[f]ees may be awarded only for frivolous claims, and a defendant bears the burden of establishing that the fees for which it is asking are in fact incurred solely by virtue of the need to defend against those frivolous claims.” Harris v. Maricopa Cnty. Super. Ct., 631 F.3d 963, 971 (9th Cir.2011); see also Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055, 1063-64 (9th Cir.2006) (following other circuits in permitting defendants to recover fees under § 1988 for those claims that were frivolous, even when related to the non-frivolous claims, so long as the claims were “distinctive”). Because Congress modeled the fee-shifting provisions of § 1415 on § 1988, we conclude that this principle is equally applicable in the § 1415 context. See R.P., 631 F.3d at 1125. Therefore, we reverse in part and affirm in part the award of attorney’s fees. Accordingly, we remand this case to the district court with specific instructions to determine which fees are attributable solely to litigating the frivolous § 1983 and ADA claims in this case and to award attorney’s fees against KS.’s attorneys in an amount limited to fees generated for work litigating those claims only.'
This panel, as presently constituted, will entertain any further appeals in this case.
IV.
For the foregoing reasons, the district court’s order awarding attorney’s fees and costs is reversed in part and affirmed in part.
Each party shall bear its own costs on appeal.
AFFIRMED in part; REVERSED in part; REMANDED.

. An IEP is a written statement for each child with a disability that includes (i) "a statement of the child’s present levels of academic achievement and functional performance”; (ii) "a statement of measurable annual goals, including academic and functional goals”; (iii) "a description of how the child’s progress toward meeting the annual goals ... will be measured”; (iv) "a statement of the special education and related services and supplementary aids and services ... to be provided to the child”; (v) "an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class”; (vi) "a statement of any individual appropriate, accommodations that are necessary to measure the academic achievement and functional performance of the child on State and districtwide assessments”; (vii) "the projected date” for the beginning of the services” in (iv); and (viii) beginning when the child is 16, "measurable postsecondary goals” along with the "transition services ... needed to assist the child” in reaching those goals. 20 U.S.C. § 1414(d)(1)(A)(i).

. Once a parent requests an IEE at public expense, “the public agency must, without unnecessary delay, either (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or (ii) Ensure that an independent educational evaluation is provided at public expense....” 34 C.F.R. § 300.502(b)(2). "[Id the final decision is that the agency’s evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.” Id. at (b)(3); see Cal. Educ.Code § 56329(c) (“If the final decision resulting from the due process hearing is that the assessment is appropriate, the parent or guardian maintains the right for an independent educational assessment, but not at public expense.”).

. The district court failed to analyze whether the claim was frivolous at the administrative hearing stage, despite suggesting it could award attorney's fees for fees incurred at the due process stage. In theory, however, fees are available for the time spent litigating before the ALJ. See Lucht v. Molalla River Sch. Dist., 225 F.3d 1023, 1028 (9th Cir.2000) ("[T]he text of § 1415(i)(3)(B) suggests that Congress intended that attorney fee awards be available in actions and proceedings under § 1415 as well as in impartial due process hearings.”).

. A search of WestlawNext reveals only five cases citing this provision, two of which are the two decisions by the district court in this case.

. "We may affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied'on the same grounds or reasoning we adopt.” Atel Fin. Corp. v. Quaker Coal Co., 321 F.3d 924, 926 (9th Cir.2003) (per curiam); see also, Patton v. Cnty. of Kings, 857 F.2d 1379, 1381 (9th Cir.1988) ("Ordinarily, a district court's failure to provide any explanation regarding its conclusion that plaintiff’s suit is frivolous necessitates remand. However, when a court does not enter a specific finding of fact or conclusion of law, we will uphold the result if there is a reasonable view of the record to support it.”).

. The dissent argues that K.S. dismissed her ADA intimidation and § 1983 claims by stipulation “almost immediately after opposing counsel objected to their inclusion in the amended complaint,” and that, therefore, the claims should not be deemed sanction-worthy. This statement is neither true nor relevant. Our conclusion rests on a finding that the ADA and § 1983 claims were frivolous from the outset. Although K.S. did file them again after they were dismissed with prejudice, she did not stipulate to dismiss them until after the District filed a second motion to dismiss them. But that fact is irrelevant to our conclusion that the claims were always frivolous.

. Indeed, counsel for C.W. conceded at oral argument that the § 1983 claim was frivolous to the extent C.W. sought monetary damages.

. The District confirmed during oral argument that it did not seek attorney's fees from K.S., but from K.S.’s counsel only.

. Whether K.S.'s counsel brought the § 1983 and ADA claims for an improper purpose is unnecessary to decide because a finding of frivolousness alone is sufficient to allow the District to recover attorney’s fees against counsel under § 1415.