**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

JAN 7 2022

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHERYL NOLTE BARNES, Qui Tam Relator; ex rel. United States of America, | No. 21-15137 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-01621-JCM-VCF |
| v. | |
| CLARK COUNTY, a Political Subdivision of the State of Nevada; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted October 21, 2021
San Francisco, California

Before: MURGUIA, Chief Judge, and WALLACE and BEA, Circuit Judges.

The False Claims Act ("FCA") provides that "in qui tam cases, a court may award attorneys' fees against the plaintiff if the 'action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.'" *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) (quoting 31 U.S.C.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

§ 3730(d)(4)).  This court has developed a stringent test for "clearly frivolous" actions under the FCA: "An action is 'clearly frivolous' when 'the result is obvious or the appellant's arguments . . . are wholly without merit.'"  *Pfingston*, 284 F.3d at 1006.  Following the dismissal of Relator's qui tam action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the district court granted Defendants' renewed motion for attorneys' fees on the grounds that Relator's "claims were clearly frivolous" under 31 U.S.C. § 3730(d)(4).  Relator appeals that decision.  We review the attorneys' fees award for abuse of discretion[1] and reverse.

## I.

This is the second time we review an attorneys' fees award in this case.[2]  Previously, the district court granted Defendants' motion for attorneys' fees on the

---

[1]  *See United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574, 576 (9th Cir. 1996) (reviewing for abuse of discretion the district court's order that defendant must pay attorneys' fees to qui tam relator rather than the law firm that represented relator), *abrogation on other grounds recognized by United States v. Kim*, 806 F.3d 1161, 1173–74 (9th Cir. 2015); *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007) (reviewing for abuse of discretion the award of attorneys' fees to a defendant for frivolous pleading in the similar context of 42 U.S.C § 1988).  Previously, we stated that the standards governing review of sanctions under Fed. R. Civ. P. 11 "appear to be appropriate in the review of decisions on whether to impose sanctions under section 3730(d)(4)."  *Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1177 (9th Cir. 1996).  But the standards in *Simpson* are inapposite where it is not contended that counsel violated any rule and the district court is not choosing among Rule 11's variety of sanctions.

[2] Because the parties are familiar with the facts, we do not repeat them here, except where necessary to provide context for our ruling.

grounds that it "should have been obvious to plaintiff" that most of her claims were barred by the statute of limitations and that, as to her remaining claims, Relator "failed to satisfy the FCA's scienter requirement."[3] The district court reasoned that "defendants could not have 'knowingly misrepresented' their positions regarding whether [Defendants] took airspace without just compensation because the case establishing that they did in fact do so, [*McCarran Int'l Airport v. Sisolak*, 137 P.3d 1110 (Nev. 2006) ("*Sisolak*")], was decided after the representations were made."

We vacated the award because, first, we found that "the standard the district court used to assess the timeliness of [Relator's] claims is no longer good law." Second, it appeared that the "district court found that the County could not have knowingly made false certifications because the alleged misstatements occurred before the Nevada Supreme Court's ruling in [*Sisolak*]" but "the County submitted twenty-four grant applications [that Relator alleged contained false statements] after *Sisolak* was issued." In vacating the attorneys' fees award of $133,896.22, we stressed that "[t]he district court should 'make detailed findings in support of any award' on remand."

---

[3] "[T]he essential elements of False Claims Act liability are: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017) (citations omitted).

On remand, the district court granted Defendants' second motion for attorneys' fees. The district court explained that it "maintain[ed] its prior position" that Relator's "claims were clearly frivolous," now on the grounds that "there was no way that plaintiff could satisfy knowledge or materiality." A single paragraph constituted the "detailed findings" this court ordered the district court to make to support a fees award, which by that time had grown to $283,251.46.

## II.

Assessing the district court's holdings regarding Relator's allegations as to the elements of materiality and knowledge is complicated by the fact that neither the district court nor this court have previously analyzed Relator's allegations as to the element of falsity. We do so now, and interpret Relator's amended complaint to have alleged two theories as to Defendants' allegedly false statements.

First, Relator alleged that Defendants falsely stated in grant applications to the Federal Aviation Administration ("FAA") that they had complied or would comply with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 *et seq.* ("URA"). Relator alleged that the URA required, that in obtaining the airspace necessary for the functioning of the airport, Defendants would "obtain appraisals for necessary acquisitions of airspace up to the approach surface to the required height; offer to purchase the airspace for at least the amount of the appraisals; refrain from taking possession of the airspace

4

until purchasing it; and refrain from requiring any owner of airspace to bring a suit in inverse condemnation due to their failure to comply with the URA."[4]  Relator alleged that Defendants took none of these steps.  Instead, Relator alleged that Defendants took airspace near runways necessary for the functioning of the airport by passing Ordinance 1599, which became effective in 1994 and provided no payment to landowners.  Relator alleged that Defendants continued to assert in Airport Improvement Projects ("AIP") and Passenger Facilities Charge ("PFC") applications, including from 2005 onwards, that Defendants had paid just compensation for the airspace the airport was required to possess.  Relator alleged that these representations were knowingly false because Defendants had not compensated landowners whose property allegedly was taken by the land use ordinance and Defendants continued to defend inverse condemnation lawsuits brought by the landowners.

Second, Relator alleged that Defendants certified to the government that they had complied or would comply with FAA Advisory Circulars AC 150/5300-13 ("Airport Design Circular") and AC 159/5190-4A ("Model Zone Ordinance

---

[4] Relator also alleged that the FAA Model Zoning Ordinance Circular required that Defendants "refrain from any taking without payment of just compensation under local law."  Although the Model Zoning Ordinance Circular is not listed on the certification attached to Relator's amended complaint, Relator alleged that compliance with the Airport Design Circular—which *is* included in the certification—itself "requires the airport operator to comply with [the Model Zoning Ordinance Circular]."

Circular") (together, "FAA Circulars"). Relator alleged that the FAA Circulars required Defendants to acquire certain airspace near the airport, but that Defendants did not acquire title or easements to at least some of the airspace they were required to obtain.[5] Relator alleged that the government relied upon Defendants' allegedly false certification of compliance with the FAA Circulars in both AIP and PFC applications in awarding Defendants with funding from 2005 onwards.

On appeal, Defendants contend that Relator's allegations that Defendants made false statements were "clearly frivolous" on the sole basis that 49 U.S.C. § 47106(b)(1) and the assurance statement implementing that statute did not require Defendants to acquire any airspace. Nevertheless, Defendants failed to demonstrate that Relator frivolously alleged that Defendants falsely certified that they would comply with the FAA Circulars. Relator alleged that these false

---

[5] As quoted in the amended complaint, the Airport Design Circular requires that certain airspace "be protected by acquisition of a combination of zoning, easements, property interests, and other means," and that certain other "airport elements" be "on airport property," including "[a]reas under the 14 CFR Part 77 Subpart C airport imaginary surfaces out to where the surfaces obtain a height of at least 35 feet (10m) above the primary surface; and . . . [a]reas, other than those which can be adequately controlled by zoning, easements, or other means to mitigate potential incompatible land uses." Neither the district court nor this court have made any findings as to whether Defendants acquired all the airspace Relator alleged they were required to obtain due to their certification of compliance with the FAA Circulars. Defendants do not appear to challenge Relator's argument that Defendants did not acquire the airspace that Relator alleged the FAA Circulars required Defendants to obtain.

6

statements obligated Defendants to acquire and pay for certain airspace that they did not obtain. Defendants also failed meaningfully to challenge Relator's allegations that Defendants falsely certified compliance with the URA. We therefore conclude that Defendants have not established that Relator's allegations that Defendants made false statements was "clearly frivolous" under this court's stringent standard.[6]

## III.

To establish the element of materiality, Relator was required to establish that the government would have denied Defendants' grant applications if the government had known that that Defendants were not in compliance and would not comply with the alleged requirements of the URA (including payment of just compensation) in acquiring necessary airspace, or the alleged requirement of the FAA Circulars to acquire certain airspace. *See Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2003–04 (2016).

Previously, in affirming the district court's dismissal of Relator's claims, we observed that Relator's "complaint indicates only that the FAA conditioned its payments on the County's compliance with a long list of statutes, regulations, and policies." We held that Relator failed to state a claim under the FCA because she

---

[6] We stress that we make no holding concerning Defendants' actual obligations in light of their certifications to abide by the URA and FAA Circulars.

"has not plausibly alleged that the FAA placed significant weight on the County's certification of compliance with" the URA or the FAA Circulars.[7]

Problematically, the district court on remand cited this court's affirmance of the Rule 12(b)(6) dismissal of Relator's complaint to support its holding that Relator's complaint was "clearly frivolous." Rather than making "detailed findings" to support an attorneys' fees award as instructed, it stated only that "[t]he record presents no apparent avenue for plaintiff to properly allege that 'the FAA placed significant weight on the County's certification of compliance with'" the FAA Circulars and the URA "as to all passenger facility charge applications and twenty-seven grant applications identified in the complaint" and that Relator "fails to appropriately or persuasively address these concerns."

We have stated in similar contexts that in assessing whether an action was so frivolous as to permit an attorneys' fees award to the defendant "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *C.W. v. Capistrano Unified Sch.*

---

[7] We also observed that, the County "certified its compliance with the relevant provisions only 'as they relate[d] to' [each] specific application" and therefore held that Relator failed to plead adequately the element of materiality for the alleged misrepresentations in the AIP applications from 2005 onwards because they did not appear to "involve projects implicating Ordinance 1599."

*Dist.*, 784 F.3d 1237, 1245 (9th Cir. 2015) (internal quotation and citation omitted) (assessing claims under the same standard of whether "the result is obvious or the . . . arguments of error are wholly without merit" in the context of 20 U.S.C. § 1415(i)(3)(B)); *see also Harris v. Maricopa Cty. Superior Ct.*, 631 F.3d 963, 975–76 (9th Cir. 2011) (assessing claims under 41 U.S.C. § 1988). "The award of fees under the False Claims Act is reserved for rare and special circumstances." *Pfingston*, 284 F.3d at 1006–07. And, the standard for "[d]ismissal under Rule 12(b)(6) is not the same as the standard for frivolousness." *Capistrano Unified*, 784 F.3d at 1248 (citing *Neitzke v. Williams,* 490 U.S. 319 (1989)).

Although Relator has not "nudged [her] claims . . . across the line from conceivable to plausible" for the purposes of defending a motion to dismiss under Fed. R. Civ. P. 12(b)(6), *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quotations omitted), this does not mean her pleading as to materiality was "clearly frivolous" under 31 U.S.C. § 3730(d)(4). Relator did allege materiality: that Defendants promised to comply with certain laws, regulations, and guidance to obtain grant funding that "*they would not otherwise have been able to obtain.*" Moreover, it is conceivable that the government would deny a grant application if it learned that the applicant intended not to comply with the federal rules that the applicant certified it would abide by in its grant application. Further, Relator's claim is supported by the allegation that, at least in one case, the FAA followed-up after

9

approving one of Defendants' applications to "inquire[] whether Clark County was properly applying its funds . . . as Clark County has represented . . . to acquire" land near McCarran's runway.[8]

We instructed the district court to make "detailed findings in support of any award." It did not. Moreover, we conclude that Defendants have failed to establish that Relator's allegations concerning the element of materiality were "clearly frivolous." *See Pfingston*, 284 F.3d at 1006. Accordingly, the district court abused its discretion in finding that Relator's allegations concerning

---

[8] Defendants challenge Relator's allegations as to the element of materiality by arguing that in each of Defendants' twenty-seven applications from 2005–16 (apparently all AIP applications) the County certified its compliance with the relevant federal laws, regulations, and guidance "only 'as they relate[d]' to the specific application," and that "*none of the . . .* [twenty-seven payment] *applications involved airspace or Ordinance 1599*." This was also the principal argument Defendants raised in their second motion for attorneys' fees before the district court. While this argument appears more apt to challenge the element of falsity than materiality, Defendants have not established that it was "obvious" that Relator could not prove either element. Previously we stated that Relator had not adequately alleged that these applications implicated Ordinance 1599 under the standard of Fed. R. Civ. P. 12(b)(6). But it is not "obvious" from the record that Defendants have established in support of their attorneys' fees motion that none of the projects involved technical specifications that triggered the alleged requirements of the FAA Circulars and URA that Defendants possess (and have provided just compensation for) some airspace near the airport's runways, including the airspace under "imaginary surfaces" defined by 14 C.F.R. § 77.19. And, if any of these projects did obligate Defendants to possess airspace near the airport, Defendants have not established that Relator's allegations are "wholly without merit" that either Defendants have not acquired the airspace that they stated they would, or Defendants took the airspace through Ordinance 1599 but have not compensated its owners as they stated they would.

10

materiality were "clearly frivolous" because that finding was implausible and unsupported by the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009).

## IV.

To establish the element of scienter, Relator was required to establish that Defendants knowingly, recklessly, or in deliberate ignorance made false statements. 31 U.S.C. § 3729(b)(1)(A); *Universal Health Servs.*, 136 S. Ct. at 1996. "Innocent mistakes, mere negligent representations and differences in interpretations are not false certifications under the Act." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citation omitted).

The district court concluded that Relator's pleading was "clearly frivolous" as to the element of scienter in a single sentence: "As this court has already stated plainly, '[p]laintiff's assertion that defendants knowingly misrepresented their positions regarding whether defendants took airspace without just compensation does not comport with this litigation history.'" The order the district court quoted, in which the district court granted Defendants' motion to dismiss under the Rule 12(b)(6) standard, reasoned, in a few more words, that Relator's arguments "boil down to a disagreement over the proper interpretation of *Sisolak* and of defendants' duties under the law post-*Sisolak*," and that Defendants could not have

11

knowingly misrepresented they did or would not commit takings because they honestly disagreed with Relator about what *Sisolak* required.

The district court's one-sentence quotation from its order granting dismissal under the Rule 12(b)(6) standard fails to support its holding that Relator's pleading as to scienter was "clearly frivolous." *See Capistrano Unified*, 784 F.3d at 1248. Moreover, Defendants' briefing—like the district court's opinion below—addresses scienter only as to Relator's first theory of false statements (that Defendants promised they did not or would not take property without compensating its owners, but did so), but not the second (that Defendants did not acquire all the airspace they promised they possessed or would acquire). And, even granting the proposition that the Nevada Supreme Court's holding in *Sisolak* does not *guarantee* victory by other property-owners affected by Ordinance 1599 in inverse condemnation suits against Defendants, Relator's allegation that Defendants purposefully adopted a policy that required landowners to sue for compensation following the passage of Ordinance 1599 is not obviously false from the record before us. Relator alleged that Defendants promised they had paid or would pay compensation for all airspace they acquired, not that they would compensate property owners only after losing inverse condemnation actions.

Again, the district court did not make detailed findings in support of the award. Moreover, we find that Defendants have failed to establish that Relator's

allegations as to scienter were "clearly frivolous," and that the district court's contrary finding was an abuse of discretion because it is both unsupported and implausible. *See Hinkson*, 585 F.3d at 1262.

**V.**

For the reasons stated above, the district court's attorneys' fees award cannot be affirmed. And because we find that Defendants have failed to establish that Relator's allegations were "clearly frivolous," we conclude that Defendants' second motion for attorneys' fees should be denied.[9] Accordingly, the district court's grant of Defendants' second motion for attorneys' fees is **REVERSED.**

---

[9] We also reject Defendants' contention that the record is adequate to support a finding that Relator's action was "clearly vexatious, or brought primarily for purposes of harassment."