**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| C. W., a minor, by her Mother, K.S., Guardian Ad Litem; K.S., Guardian Ad Litem, *Plaintiffs-Appellants*, <br><br> v. <br><br> CAPISTRANO UNIFIED SCHOOL DISTRICT, *Defendant-Appellee*. | No. 12-57315 <br><br> D.C. No. 8:11-cv-01157-DOC-RNB <br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
August 5, 2014—Pasadena, California

Filed March 2, 2015
Amended April 9, 2015

Before: Stephen Reinhardt, Kim McLane Wardlaw,
and Consuelo M. Callahan, Circuit Judges.

Order;
Opinion by Judge Wardlaw;
Partial Concurrence and Partial Dissent by Judge Reinhardt

## SUMMARY[*]

### Attorney's Fees

The panel filed (1) an amended opinion and (2) an order amending the opinion, denying a petition for rehearing and a suggestion for rehearing en banc, and directing the mandate to issue forthwith.

In the amended opinion, the panel affirmed in part and reversed in part the district court's award of attorney's fees and costs to Capistrano Unified School District as the prevailing defendant in an action alleging violations of the Individuals with Disabilities Education Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983.

The panel agreed with the district court that the ADA and § 1983 claims were frivolous, and affirmed the district court to the extent it awarded attorney's fees and costs for representation relating to those claims. The panel concluded that the claims lacked any legal foundation, and the result was obvious. The panel also concluded that the claims were not brought for an improper purpose, which would have allowed the school district to recover fees from the plaintiff parent as well as from her attorneys.

The panel disagreed with the district court that the IDEA and Rehabilitation Act claims were frivolous and/or brought for an improper purpose, and reversed the district court to the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

extent it awarded attorney's fees and costs related to the litigation of those claims under 20 U.S.C. § 1415(i)(3)(B).

The panel remanded the case to the district court with specific instructions to determine which fees were attributable solely to litigating the frivolous ADA and § 1983 claims.

Judge Reinhardt concurred in part and dissented in part. He agreed with the majority that the claims under the IDEA and the Rehabilitation Act were not frivolous and that none of the claims was brought for an improper purpose. Disagreeing with the majority, Judge Reinhardt wrote that the ADA and § 1983 claims, which were based on the same facts as the Rehabilitation Act claim, were not frivolous.

---

### COUNSEL

Gregory S. Fisher (argued), Davis Wright Tremaine LLP, Anchorage, Alaska; Jennifer Guze Campbell and Vanessa Jarvis, Special Education Law Firm, APC, Lakewood, California, for Plaintiffs-Appellants.

Amy R. Levine (argued), Ernest Bell, and Matthew J. Tamel, Dannis Woliver Kelley, San Francisco, California, for Defendant-Appellee.

William S. Koski and Carly J. Munson, Youth & Education Law Project, Mills Legal Clinic, Stanford Law School, Stanford, California; Paula D. Pearlman, Michelle Uzeta, and Anna Rivera, Disability Rights Legal Center, Los Angeles, California, for Amici Curiae Disability Rights Legal Center, Disability Rights California, Public Counsel Law Center, Children's Rights Clinic at Southwestern Law School,

Pepperdine University School of Law Special Education Advocacy Clinic, and University of San Diego Legal Clinics.

Jonathan J. Mott and Cynthia A. Yount, Parker & Covert LLP, Tustin, California, for Amicus Curiae California School Boards Association Education Legal Alliance.

---

## ORDER

The opinion filed on March 2, 2015 is hereby amended, and an amended opinion is filed concurrently with this order.

With that amendment, Judges Wardlaw and Callahan have voted to deny, and Judge Reinhardt has voted to grant, appellants' petition for rehearing. The panel has voted to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

Thus, the petition for rehearing is **denied** and the suggestion for rehearing en banc is rejected. No further petitions for rehearing or for rehearing en banc will be entertained. The mandate shall issue forthwith.

**IT IS SO ORDERED.**

**OPINION**

WARDLAW, Circuit Judge:

C.W. appeals the district court's award of attorney's fees and costs to Capistrano Unified School District, ("the District"), as the prevailing defendant in an action alleging violations of the Individuals with Disabilities Education Act ("IDEA"). In addition to the IDEA claims, attorneys for C.W. also claimed violations of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983, based on a claim of retaliation arising from a letter threatening sanctions sent by the District's counsel should C.W.'s parent ("K.S.") continue to pursue this appeal. Because we agree with the district court that the ADA and § 1983 claims are frivolous, we affirm the district court to the extent it awarded attorney's fees and costs for representation relating to those claims. We disagree with the district court, however, that plaintiff's IDEA and Rehabilitation Act claims were frivolous and/or brought for an improper purpose, and we therefore reverse the district court to the extent it awarded attorney's fees and costs related to the litigation of those claims.

I.

A.

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free and appropriate public education" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. §§ 1400(d)(1)(A)-(B). "The statute sets forth procedures for resolving disputes in a manner that, in the Act's express terms, contemplates parents will be the parties

bringing the administrative complaints." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 527 (2007). The IDEA relies in numerous ways on the involvement of parents in the process of developing Individualized Education Programs for students with special needs, and provides a detailed scheme for parents to pursue remedies when they believe that their child has been deprived of a free and appropriate education. Since its inception, the IDEA, like most civil rights statutes, has allowed a prevailing plaintiff to seek attorney's fees and costs. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301–02 (2006) (noting the "virtually identical [] wording" of § 1415(i)(3)(B) and 42 U.S.C. § 1988). In 2004, Congress amended 20 U.S.C. § 1415(i)(3)(B), to allow a prevailing defendant in an IDEA case to seek fees against the attorneys of a parent or against the parent himself if the claims alleged were frivolous or brought for an improper purpose. *See* P.L. No. 108-446, December 3, 2004, 118 Stat. 2647.

## B.

At the time of the disputed occupational therapy assessment in this case, C.W. was 11-years old. C.W. was and continues to be eligible for special education services under the eligibility category of "Other Health Impairment" because she has cerebral palsy, a ventriculoperitoneal shunt, and a heart murmur. C.W. also has low cognitive ability. C.W. was in a special day class at Crown Valley Elementary School within the District.

The District performed its legally required triennial assessment of C.W. in 2010. The multidisciplinary team recommended that C.W. remain eligible for special education and related services because "she exhibits a severe health

disorder which adversely affects educational performance." Following an initial Individualized Education Program[1] meeting in October 2010, K.S. consented to an occupational therapy assessment for C.W.  This assessment of C.W. in areas of gross and fine motor development, was conducted by Rebecca Hirchag, a licensed occupational therapist ("OT"). The OT assessment included a review of medical and educational records, a teacher interview, a parent interview, naturalistic observations of performance in an educational setting, and clinical observations, as well as five different standardized assessment tools.  The OT report concluded:

> Assessment revealed fine motor precision and bilateral integration skills in the average range when compared to typically developing peers her same age.   Scores for fine motor integration and upper limb coordination were slightly below average however in alignment with her academic ability.  Manual dexterity scores were impacted by time.  Please see

---

[1] An IEP is a written statement for each child with a disability that includes (i) "a statement of the child's present levels of academic achievement and functional performance"; (ii) "a statement of measurable annual goals, including academic and functional goals"; (iii) "a description of how the child's progress toward meeting the annual goals . . . will be measured"; (iv) "a statement of the special education and related services and supplementary aids and services . . . to be provided to the child"; (v) "an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class"; (vi) "a statement of any individual appropriate accommodations that are necessary to measure the academic achievement and functional performance of the child on State and districtwide assessments"; (vii) "the projected date" for the beginning of the services" in (iv); and (viii) beginning when the child is 16, "measurable postsecondary goals" along with the "transition services . . . needed to assist the child" in reaching those goals.  20 U.S.C. § 1414(d)(1)(A)(i).

accommodations in the chart below to assist
[C.W.] in the classroom. . . . In the classroom
she is focused and attentive, she is processing
sensory information with regards to her access
of educational environment.

Hirchag made several recommendations for goals,
modifications, or accommodations based on C.W.'s
weaknesses in manual dexterity, registration and sensitivity,
remembering content during written language assignments,
spelling, and desk organization, but she did not recommend
whether any direct OT services were needed. The IEP,
informed by the OT assessment, recommended a one hour-
monthly collaboration between an OT therapist and C.W.'s
teacher to evaluate strategies for going forward, as well as
two 30-minute individual OT consults per year.

Hirchag presented the OT assessment at a January 12,
2011 IEP meeting, and K.S. responded that it was "stupid."
K.S. also expressed shock that the OT assessment concluded
that C.W. was able to appropriately cut a shape from paper,
and said that at home, C.W. holds scissors incorrectly.

On January 25, 2011, K.S., pursuant to California law,
requested an independent educational evaluation for
occupational therapy based on her disagreement with the
occupational therapy portion of the January 2011 IEP. *See*
Cal. Educ. Code § 56329(b) (granting parents the "right to
obtain, at public expense, an independent educational
assessment of the pupil from qualified specialists . . . if the
parent or guardian disagrees with an assessment obtained by
the public education agency"); 34 C.F.R. § 300.502(a)
(same). K.S. refused to consent to the OT portion of the IEP
because the District failed to include in C.W.'s January 2011
IEP all of the OT report's recommended accommodations.

The letter was signed by attorney Jennifer Guze Campbell of the Special Education Law Firm.

On February 23, 2011, the District denied the request for an independent educational evaluation at public expense. The District filed its complaint initiating a due process hearing before an Administrative Law Judge ("ALJ") on March 4, 2011.[2]

C.

The Due Process hearing concerned two issues: (1) whether the OT assessment was appropriate; and (2) whether the District committed a procedural IDEA violation by delaying unnecessarily in filing its due process complaint. The ALJ reviewed the records and took testimony, principally from Hirchag. The ALJ concluded that the OT assessment was administered properly pursuant to the correct test manual and in compliance with the statutory requirements. The ALJ also concluded that the forty days between the IEE request and the filing of the Due Process complaint was not unnecessary delay.

---

[2] Once a parent requests an IEE at public expense, "the public agency must, without unnecessary delay, either– (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or (ii) Ensure that an independent educational evaluation is provided at public expense . . . ." 34 C.F.R. § 300.502 (b)(2). "[If] the final decision is that the agency's evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense." *Id.* at (b)(3); *see* Cal. Educ. Code § 56329(c) ("If the final decision resulting from the due process hearing is that the assessment is appropriate, the parent or guardian maintains the right for an independent educational assessment, but not at public expense.").

Because the ALJ concluded that the District's OT assessment was appropriate, C.W. remained able to obtain an independent assessment, but not at a public expense. K.S.'s remedy was to appeal the ALJ decision in federal district court. On July 1, 2011, K.S.'s attorney wrote to the District indicating that K.S. would forego an appeal if the District agreed to fund the IEE for occupational therapy and pay $12,500 in attorney's fees and costs to her attorneys, The Special Education Law Firm. Counsel noted that: "legal fees will continue to increase as this matter proceeds to Federal litigation if the parties do not achieve a settlement agreement." The District's attorney responded in a letter dated July 14, 2011:

> Your July 1, 2011 correspondence cements your office's pattern of litigating, and threatening to litigate, nonexistent violations . . . As you are aware, continued litigation as to the appropriateness of the District's 2011 occupational therapy assessment is frivolous . . . . Accordingly, the District reserves the right to seeks [sic] sanctions against you and your client if the most recent administrative decision is appealed.

### D.

On August 3, 2011, K.S. filed an appeal of the ALJ's decision in federal district court, adding claims for violations of the intimidation clause of the Americans with Disabilities Act, 42 U.S.C. § 12203(b); 42 U.S.C. § 1983 for retaliation in violation of K.S.'s First Amendment rights; and § 504 of the Rehabilitation Act of 1973. Each of these additional claims was based on the theory that the District's July 14,

2001 letter was an attempt to intimidate K.S. from pursuing her legal right to appeal the ALJ decision.

The District moved under Federal Rule of Civil Procedure 12(b)(6) for dismissal of the ADA, § 1983, and § 504 claims. The district court dismissed the ADA claim with prejudice; dismissed the § 1983 claim with prejudice, except to the extent injunctive relief was sought; and dismissed the § 504 claim because, as pled, it failed to meet the standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), but granted K.S. leave to amend the § 504 claim because an amendment might not be futile.

On January 13, 2012, K.S. filed an amended complaint alleging the § 1983 and ADA claims once more and pleading the § 504 claim with more particularity. In response, the District filed a second motion to dismiss on January 27, 2012, and on January 31, the parties stipulated to dismiss the § 1983 and ADA claims with prejudice. The district court dismissed the § 504 claim with prejudice on March 23, 2012.

On July 2, 2012, K.S. moved for summary judgment, arguing the ALJ incorrectly ruled on the adequacy of the OT assessment because it failed to recommend that C.W. may need special education and related services and that the District had not unnecessarily delayed in filing the due process complaint.

On August 3, 2012, the district court affirmed the ALJ's decision, finding that it "contain[ed] no factual errors and was thorough and careful," and concluding that the disputed occupational therapy report did not violate the IDEA and the District did not unnecessarily delay its due process complaint. The court further denied K.S.'s request for attorney's fees and

invited the District to file a request for attorney's fees because the "bases for appeal [were] frivolous."

The District accepted the court's invitation and was awarded $94,602.34 in attorney's fees and $2,058.21 in costs. The district court found that each of the claims was "frivolous, unreasonable, and without foundation." Further, the court concluded that these claims were brought by K.S. for the improper purpose of "harassment, unnecessary delay, and needlessly increasing litigation costs," exposing K.S. to potential personal liability for the fees.

## II.

We review for abuse of discretion a district court's award of attorney's fees to a prevailing defendant under the fee provisions of the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(II)–(III). *R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011). "A district court abuses its discretion when it awards fees based on an inaccurate view of the law or a clearly erroneous finding of fact." *Benton v. Or. Student Assistance Comm'n*, 421 F.3d 901, 904 (9th Cir. 2005) (internal quotation marks and citation omitted). In reviewing attorney's fees awards in other contexts, we "employ a two-step inquiry to determine whether a district court abused its discretion in applying law to facts in a manner that is 'essentially factual.'" *United States v. Capener*, 608 F.3d 392, 400 (9th Cir. 2010) (internal citation omitted).

> First, we determine de novo whether the trial court identified the correct legal rule to apply to the relief requested. If it did, we then evaluate the trial court's application of this legal standard to the facts of the case and may

> reverse only if its application was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.

*Id.* (internal citations and quotation marks omitted). Moreover, "[a]ny elements of legal analysis which figure in the district court's decision are . . . subject to de novo review." *Benton*, 421 F.3d at 904.

## A.

Section 1415 allows prevailing defendants in IDEA cases to recover fees from the attorney of a parent and from a parent in certain rare circumstances. A prevailing school district may recover attorney's fees against the parent's attorney where the complaint is "frivolous, unreasonable, or without foundation" (the "frivolous prong"). 20 U.S.C. § 1415(i)(3)(B)(i)(II). Additionally, attorney's fees may be awarded against a parent or her attorney, "if the parent's complaint or subsequent cause of action was presented for any improper purpose" (the "improper purpose prong"). 20 U.S.C. § 1415(i)(3)(B)(i)(III). The statute gives examples of improper purposes, including "to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." *Id.*

We have previously noted that there is little case law governing fee awards to prevailing defendants under the IDEA. *R.P.*, 631 F.3d at 1124. In *R.P.*, though we rejected the autistic child's claim that he was denied a fair and appropriate education in violation of the IDEA, we reversed the district court's award of attorney's fees to the school district because it applied an improper and unsupported legal standard. There, we concluded:

> [T]he language of the IDEA's fee-shifting statute is nearly identical to 42 U.S.C. § 1988, the general fee-shifting provision for federal civil rights cases. And the IDEA's language granting fees to prevailing defendants is nearly identical to the standard the Supreme Court developed in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, . . . (1978), which is now the standard for awarding fees to prevailing defendants in civil rights cases.

*Id.* at 1124–25 (internal quotation marks and citations omitted). We explained that the legislative history of § 1415 demonstrates that Congress fashioned the first part of the law, which allows defendants to recover if a claim is frivolous, after the *Christiansburg* standard. The second part of the law, § 1415(i)(3)(B)(i)(III), which allows a prevailing party to recover against the parents or the parents' attorneys in the event that a claim is brought for an improper purpose, "comes from another well-established Federal law: Federal Rule of Civil Procedure 11." *R.P.*, 631 F.3d at 1125 (quoting 150 Cong. Rec. S5250, S5349 (daily ed. May 12, 2004) (statement of Sen. Gregg)). We therefore "rely on *Christiansburg* and Rule 11 cases to determine whether the district court abused its discretion in awarding attorney's fees to the school district against the parents and their lawyer." *Id.*

## B. Frivolousness

### 1. IDEA Claims

In assessing the frivolousness of the IDEA claims, the district court abused its discretion by failing to properly apply the *Christiansburg* standard. *R.P.*, 631 F.3d at 1124–25.

When the correct legal standard is applied, it is clear that the claims were not frivolous within the meaning of the statute.

Under *Christiansburg*, a prevailing defendant is entitled to attorney's fees only if plaintiff's "claim was frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422. In considering what constitutes a claim that is frivolous, unreasonable or groundless, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22. And, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Id.* at 422.

Applying the *Christiansburg* frivolousness standard, we have held that "[a] case may be deemed frivolous only when the result is obvious or the . . . arguments of error are wholly without merit." *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (internal citation and quotation marks omitted). Moreover, when there is very little case law on point and a claim raises a novel question, the claim is much less likely to be considered frivolous. *Id.*

To the extent that the district court implied that the IDEA claims were frivolous at the administrative hearing stage, it erred.[3]  First, the District, not K.S., filed the due process

---

[3] The district court failed to analyze whether the claim was frivolous at the administrative hearing stage, despite suggesting it could award attorney's fees for fees incurred at the due process stage. In theory, however, fees are available for the time spent litigating before the ALJ. *See Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1028 (9th Cir. 2000)

complaint after it decided not to address K.S.'s two concerns regarding the OT assessment that was provided. Second, the ALJ's inquiry focused narrowly on "[w]hether the District's January 5, 2011 occupational therapy (OT) assessment was appropriate." K.S. contended that the OT assessment was not appropriate because: (1) The testing used and the scoring of at least one of the OT tests underlying the OT assessment was inappropriate; and (2) the report failed to comply with statutory requirements because the report omits the assessor's conclusion about whether C.W. actually required special education services. The ALJ conducted a thorough review of these claims, taking testimony from the OT assessor, and ultimately rejected K.S.'s arguments. Nothing in the ALJ's decision hints that these claims were frivolous—indeed, the ALJ's careful analysis, findings of fact, and conclusions of law indicate the seriousness of K.S.'s claims.

Nor were the IDEA claims frivolous as the litigation continued. In the motion for summary judgment before the district court, K.S. argued that the requirement of California Education Code § 56327—that a written assessment of a student include a statement of whether the pupil may need special education and related services—was not met in this case. K.S. disagreed with the report because it did not adequately address C.W.'s then-current situation. Specifically, it was undisputed that the OT report did not include any specific recommendation and evinced concern that the subsequently recommended collaborative OT would merely take the form of *ad hoc* informal conversations

("[T]he text of § 1415(i)(3)(B) suggests that Congress intended that attorney fee awards be available in actions and proceedings under § 1415 as well as in impartial due process hearings.").

between the OT therapist and C.W.'s teacher rather than any actual occupational therapy.

K.S.'s claims relating to the OT assessment were poorly plead and argued and she ultimately lost; however, this does not mean they were frivolous. As we said in *R.P.* 631 F.3d at 1126, "[l]awyers would be improperly discouraged from taking on potentially meritorious IDEA cases if they risked being saddled with a six-figure judgment for bringing a suit where they have a plausible, though ultimately unsuccessful, argument, as here."  There was some basis for K.S.'s belief that the OT assessment was inappropriate, some basis for concluding that the report failed to meet the procedural requirements of California Education Code § 56327 (a–b), and some basis for believing that the IEP failed to provide C.W. with a free and public education ("FAPE").  In its decision on the merits, the district court concluded that because the District did not "dispute [C.W.'s] eligibility at the time the Disputed Report was written," the procedural violation alleged is "especially frivolous."  This conclusion misapprehended the fact that the OT assessment itself could be read to violate California Education Code § 56327, which requires anyone who assesses the pupil to prepare a written report which includes "[w]hether the pupil may need special education and related services," and "[t]he basis for making the determination."  In reviewing the OT assessment, Hirchag never states whether C.W. is or is not eligible for OT services and on what basis.  While the district court appropriately notes that the OT assessment mentions that C.W. was eligible for special education services, § 56327 by its own terms also states that the report should note whether the pupil may need "related services."  Given the dearth of cases citing or

interpreting § 56327's requirements,[4] it was hardly a foregone conclusion that a challenge to the OT assessment on the basis of its failure to include a section recommending what OT services should be provided to C.W. or seeking an independent evaluation to ascertain which services should be provided, could not prevail. *See Karam*, 352 F.3d at 1195 ("A case is less likely to be considered frivolous when there is very little case law directly apposite.") (citation and internal quotation marks omitted). As in *Karam*, "[t]hese circumstances furnish some basis, albeit somewhat tenuous," 352 F.3d at 1196, for the conclusion that there was some factual basis for C.W.'s claim. The factual basis for the claim in concert with the lack of apposite case-law demonstrates that this claim is not frivolous.

In its analysis of the frivolousness of the 41-day "unnecessary delay" claim, the district court also failed to cite any case law setting forth the standard for frivolousness. Under *Christiansburg*, K.S.'s claim that the 41-day delay between parent's request for an IEE and the District filing for a due process hearing was "unnecessary" in violation of 34 C.F.R. § 300.502 (b)(2) was not frivolous. Although other courts have held that periods of time longer than 41-days do not constitute an "unnecessary delay," those same courts have highlighted the fact-specific inquiry necessary to determine whether the delay violated the Regulation. *See, e.g.*, *J.P. v. Ripon Unified Sch. Dist.*, No. 2:07-cv-02084-MCE-DAD, 2009 WL 1034993, at *7–8 (E.D. Cal. Apr. 15, 2009).

---

[4] A search of WestlawNext reveals only five cases citing this provision, two of which are the two decisions by the district court in this case.

## 2.  Retaliation-Based Claims

The district court did not discuss *Christiansburg* in concluding that the three retaliation-based claims were frivolous.  Nonetheless, our review of these claims under the proper legal framework demonstrates that two of the three retaliation-based claims were frivolous, and we affirm the district court's finding as to these claims.[5]

The ADA intimidation claim and the § 1983 claim lack any legal foundation and "the result is obvious."  *Karam*, 352 F.3d at 1195.  The ADA intimidation claim filed under 42 U.S.C. § 12203(b) had an outcome that was clear at the time it was filed.  Section 12203(b) states: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, *any right granted or protected by this chapter*."  (emphasis added).  By its own terms, protection under the ADA against intimidation does not extend to a plaintiff's attempts to exercise rights granted or protected by the IDEA—the basis of K.S.'s claim in this case. *See Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) ("Because [Plaintiff's] § 1983 complaint

---

[5] "We may affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning we adopt." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) (per curiam); *see also*, *Patton v. Cnty. of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988) ("Ordinarily, a district court's failure to provide any explanation regarding its conclusion that plaintiff's suit is frivolous necessitates remand.  However, when a court does not enter a specific finding of fact or conclusion of law, we will uphold the result if there is a reasonable view of the record to support it.").

against [Defendant] is completely barred by the terms of the statute, we find that her claim is 'unreasonable' and 'meritless.'").  The district court concluded as much in dismissing the claim with prejudice.  Despite this dismissal, K.S.'s attorneys pled the same claim in their First Amended Complaint requiring the District to respond once again to this frivolous claim.[6]

The § 1983 claim seeking monetary damages and injunctive relief is likewise frivolous, its outcome predetermined by a review of relevant law.  It is well-established that a school district cannot be sued for damages under § 1983.  *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992) (holding that in California, school districts are state agencies for purposes of Eleventh Amendment immunity, and concluding that school districts cannot be liable for damages under § 1983).  The district court dismissed this claim with prejudice, except insofar as K.S. sought some sort of injunctive relief against the district. The request for injunctive relief, however, also is frivolous because K.S. failed to indicate what she sought to enjoin or what injunctive relief would be possible in this case.  *See Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987) ("[F]ailure to justify the basis for the [damages sought] only serve[s] to support the district court's conclusion

---

[6] The dissent argues that K.S. dismissed her ADA intimidation and § 1983 claims by stipulation "almost immediately after opposing counsel objected to their inclusion in the amended complaint," and that, therefore, the claims should not be deemed sanction-worthy.  This statement is neither true nor relevant.  Our conclusion rests on a finding that the ADA and § 1983 claims were frivolous from the outset.  Although K.S. did file them again after they were dismissed with prejudice, she did not stipulate to dismiss them until after the District filed a second motion to dismiss them.  But that fact is irrelevant to our conclusion that the claims were always frivolous.

that the damage claims were frivolous and brought to harass."). Finally, despite the district court's dismissal with prejudice of this claim, K.S. reasserted the § 1983 claim in her amended complaint, including a request for damages.[7]

The final retaliation-related claim based on § 504 of the Rehabilitation Act of 1973, in contrast, is not frivolous. Although the district court ultimately granted the District's Rule 12(b)(6) motion to dismiss, it did so after careful consideration, ultimately concluding that "the specific facts of this case would not dissuade a reasonable person from engaging in a protected activity." As the district court's own reasoning made clear, "[K.S.] present[ed] evidence that, if believed by the fact-finder, would [have] entitle[d] [her] to relief." *R.P.*, 631 F.3d at 1126. Under such circumstances, "the case is per se not frivolous and will not support an award of attorney's fees." *Id*. Moreover, although K.S. did not ultimately prevail on this case, dismissal under Rule 12(b)(6) is not the same as the standard for frivolousness. *See, e.g.*, *Neitzke v. Williams*, 490 U.S. 319 (1989) (discussing at length the difference between failure to state a claim under Rule 12(b)(6) and a finding of frivolousness).

## C. Improper Purpose

The district court also concluded that K.S.'s claims were brought for an improper purpose, thus exposing K.S. to liability for attorney's fees—an extreme result that not even the District sought.[8] A finding of frivolousness, without a

---

[7] Indeed, counsel for C.W. conceded at oral argument that the § 1983 claim was frivolous to the extent C.W. sought monetary damages.

[8] The District confirmed during oral argument that it did not seek attorney's fees from K.S., but from K.S.'s counsel only.

finding of improper purpose, allows a school district to recover fees from the attorneys, not the parents. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(III). "It's therefore harder for a school district to collect attorney's fees against parents than against their lawyers: Collecting against parents requires a showing of both frivolousness and an improper purpose, while collecting against their attorneys requires only a showing of frivolousness. This makes sense, since parents are not usually in the position to assess whether a claim is frivolous." *R.P.*, 631 F.3d at 1126.

We have held, as a matter of law, that "a non-frivolous claim is never filed for an improper purpose." *Id.* Therefore, we consider only whether the § 1983 and ADA claims were brought for an improper purpose. Federal Rule of Civil Procedure 11(b) governs our analysis. *See id.* at 1125. We have recognized that under Rule 11(b)(1), "[a]n improper purpose is a purpose to 'harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1110 (9th Cir. 2003) (quoting Rule 11(b)(1)). An improper purpose "is 'tested by objective standards,'" *id.* (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 n.9 (9th Cir. 1986)), and may be found where "a motion or paper, other than a complaint, is filed in the context of a persistent pattern of clearly abusive litigation activity." *Aetna Life Ins. Co. v. Alla Med. Servs. Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988).

The district court concluded that K.S. demonstrated her improper purpose by her "attempt to extort fees from District to which Mother was not legally entitled in exchange for Mother foregoing an appeal." The district court stated: "In short, Mother's offer to ransom her child's IDEA appeal in exchange for money to which her non-attorney advocate was not entitled shows that the purpose of this appeal was not to

vindicate the rights of her disabled child." There is no basis in the record for this finding.

First, a reading of the terms of the settlement offer reveals no attempt by K.S. to "ransom" the appeal in exchange for any improper gain. In that settlement offer, K.S. sought both the District's funding of an IEE and the attorney's fees and costs incurred by the Special Education Law Firm. Her settlement offer— clearly contingent upon her child receiving the IEE that K.S. believed C.W. deserved— cannot be characterized as an effort to improperly extort funds.

Second, from the start, all K.S. sought was a proper OT recommendation for her child. When the District refused to provide the requested recommendation, she defended against the District's due process complaint, and then, prior to appealing the adverse decision, provided, through the settlement offer, an option to avoid further litigation should the District agree to fund the IEE that she sought for C.W. When the District refused to settle the dispute, K.S. appealed. The record fails to reflect the one-sided effort to "unnecessarily increase the litigation costs incurred by District until it acquiesced to lining the pockets of her non-attorney advocate" described by the district court. Nor do the July 2011 letters counsel exchanged reflect "clearly abusive litigation activity"; they were, rather, a sideshow by overzealous advocates. *Aetna Life Ins.*, 855 F.2d at 1476.

Furthermore, the district court's order shows a degree of frustration with K.S. and her counsel. ("Finally, Mother's latest salvo against this Court is entirely consistent with her strategy throughout this appeal of casting unfounded aspersions on the expertise or reasoning of others to deflect from her own shortcomings.") District Court's Order, p. 14. To the extent that the district court's frustration with K.S. and

counsel colored its legal conclusions that these claims were brought for an improper purpose, this was error. As already discussed, no evidence supports an alleged improper purpose. Instead, the record compels the conclusion that K.S. was simply attempting to "vindicate the rights of [her] disabled child."[9] *R.P.*, 631, F.3d at 1127. K.S.'s steadfast determination to ensure that her child received the appropriate OT is not an improper purpose justifying an award of attorney's fees. Indeed, we have made clear that "anger is a legitimate reaction by parties who believe that their rights have been violated or ignored." *Id.* at 1127.

## III.

Where a plaintiff has asserted both frivolous and non-frivolous claims, a prevailing defendant may recover attorney's fees under § 1988 for the time attributable to defending against solely the frivolous claims. *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011). We have held that, "[f]ees may be awarded only for frivolous claims, and a defendant bears the burden of establishing that the fees for which it is asking are in fact incurred solely by virtue of the need to defend against those frivolous claims." *Harris v. Maricopa Cnty. Super. Ct.*, 631 F.3d 963, 971 (9th Cir. 2011); *see also Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1063–64 (9th Cir. 2006) (following other circuits in permitting defendants to recover fees under § 1988 for those claims that were frivolous, even when related to the non-frivolous claims, so long as the claims were "distinctive"). Because Congress modeled the fee-shifting provisions of § 1415 on § 1988, we

---

[9] Whether K.S.'s counsel brought the § 1983 and ADA claims for an improper purpose is unnecessary to decide because a finding of frivolousness alone is sufficient to allow the District to recover attorney's fees against counsel under § 1415.

conclude that this principle is equally applicable in the § 1415 context. *See R.P.*, 631 F.3d at 1125. Therefore, we reverse in part and affirm in part the award of attorney's fees. Accordingly, we remand this case to the district court with specific instructions to determine which fees are attributable *solely* to litigating the frivolous § 1983 and ADA claims in this case and to award attorney's fees against K.S.'s attorneys in an amount limited to fees generated for work litigating those claims only.

This panel, as presently constituted, will entertain any further appeals in this case.

IV.

For the foregoing reasons, the district court's order awarding attorney's fees and costs is reversed in part and affirmed in part.

Each party shall bear its own costs on appeal.

**AFFIRMED in part; REVERSED in part; REMANDED.**

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

This case is about a mother who engaged in IDEA litigation principally to secure an independent educational evaluation for occupational therapy for her child, who indisputably has special education needs. In the course of litigating her IDEA claim, the mother alleged that her child's

school district violated not only the Individuals with Disabilities Education Act (IDEA), but also the Rehabilitation Act, the Americans with Disabilities Act (ADA), and § 1983 by improperly threatening to seek sanctions against her and her counsel if they appealed the administrative denial of the child's IDEA claims.

At the conclusion of the mother's unsuccessful attempt to obtain an independent educational evaluation in the district court, the district judge of his own accord invited the school district to file a motion for attorney's fees. The district judge — expressing a "degree of frustration" with the child's mother and her counsel, Maj. Op. at 23 — then awarded the school district nearly $100,000 in fees and costs, finding not only that each of the mother's claims was frivolous, but that they were brought for improper purposes — "namely, to 'harass,' 'cause unnecessary delay,' and 'needlessly increase the costs of litigation'" (citing 20 U.S.C. § 1415(i)(3)(B)(i)(III)). Under the IDEA, the latter finding exposed the mother herself to potential liability.

In almost all respects, the majority correctly finds that the district court was wrong. Specifically, the majority holds that the claims under the IDEA and the Rehabilitation Act were *not* frivolous, and it holds that *none* of the claims was brought for any improper purpose. To that extent, I agree completely with the majority. My colleagues, however, perhaps out of a desire to give something to both sides, partially affirm the district court's decision by holding that the claims under the ADA and § 1983 were frivolous, although those claims were based entirely on the very same facts that underlay the non-frivolous claim under the Rehabilitation Act. This holding represents more than what some might call legalistic argle-bargle. To hold that when a litigant has a non-frivolous claim and pleads it under the wrong legal label as well as under the

right one, the pleadings under the wrong statutes are frivolous and warrant the imposition of sanctions runs contrary to the spirit and purpose of the IDEA. Such sanctions, if upheld, would not only penalize both civil rights litigants and lawyers for good faith efforts to correct perceived violations of statutes designed to help some of those most in need of help from our judiciary, but would chill the filing of civil rights — here, disability — claims in the first instance. Although the majority opinion should ultimately result in a very small award for the additional legal work necessary to obtain the dismissal of the ADA and § 1983 claims, the majority's decision to impose sanctions on a small special education law firm for mere overpleading is important, as it creates extremely bad law. I strongly disagree that the plaintiff's filing of her ADA and § 1983 claims justifies any sanctions at all, and I dissent from that portion of the majority opinion.

Under the IDEA, a prevailing defendant agency or district can recover fees only in "rare circumstances." *R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1124 (9th Cir. 2011). Such circumstances generally involve conduct so offensive to the fair and honorable practice of law that it merits sanctioning of the offending attorneys. An attorney who files a legitimate action for a client does not exceed the bounds of honorable lawyering when he adds to the complaint an allegation that the same conduct violates related statutes as well, whether doing so results from a disagreement with prior case law, the offering of a novel though erroneous legal theory, or an inability to thoroughly research every possible legal theory before filing the complaint. Although law firms with thousands of attorneys may be able to fully research every legal claim they assert, a small, under-staffed, and under-paid law firm seeking to protect the rights of children with disabilities should not be held to so rigorous a standard. As a lawyer with obligations to his client, counsel

from such a firm is following his professional duties far better by possibly overpleading the number of statutes the defendant's unlawful actions may violate than by underpleading them. The former does far less harm to the defendant who may readily have the extraneous counts stricken than the latter does to the plaintiff who may lose a legitimate claim should the lawyer fail to include all potentially applicable statutes. Counsel's action of referring to too many statutes, rather than too few, is not the type of "rare circumstance" that warrants the sanctioning of a lawyer asserting a legitimate IDEA claim.

That is particularly true in this case, as counsel "may have [had] an entirely reasonable ground for bringing" claims under § 1983 and the ADA, despite the fact that "the law . . . appear[ed] questionable or unfavorable at the outset." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). The damages claim under § 1983, for example, failed because we had held almost a quarter of a century ago in *Belanger v. Madera Unified Sch. Dist*, 963 F.2d 248, 254 (9th Cir. 1992), that a school district in California is an arm of the state for purposes of Eleventh Amendment immunity. Although the rule of *Belanger* is undoubtedly presently good law in our court as to the immunity of California school districts, "the Supreme Court and the vast majority of appellate courts that have considered the issue [as it relates to school districts in other states] have found that school districts and school boards are not entitled to Eleventh Amendment immunity." *Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 768–69 (11th Cir. 2014). It would not be improper or surprising for a plaintiff to question whether *Belanger* should remain good law by raising that argument for purposes of asserting it before an en banc court or even in order to preserve the possibility of seeking Supreme Court review. *See Davis v. Electronic Arts Inc.*, No. 12-15737,

2015 WL 66510, at *6 n.7 (9th Cir. Jan. 6, 2015). However, by sanctioning the attorney in this case because the plaintiff's § 1983 claim was barred by *Belanger*, the majority severely punishes the exercise of that legitimate right and violates the "rare circumstances" rule.

The plaintiff's ADA claim, moreover, was rejected by the district court only because, in its view, the statutory text under which counsel asserted that claim was not expansive enough to support the plaintiff's argument. As an initial matter, I disagree with the majority's failure to treat this claim in the same manner as it did the Rehabilitation Act claim, which the majority correctly determined was not frivolous. We have held that "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999), and the majority provides no reason not to follow that rule in this case. Even if the majority were correct, however, that the statutory text under which counsel brought the ADA claim was not expansive enough to support it, that would not be a sufficient reason to find the claim frivolous. I need not recount the number of times that a federal court has read statutory text as holding a meaning that its ordinary language would not appear to bear. *See, e.g.*, *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 76 (2002) (holding that the ADA's direct-threat defense may apply not only to "other individuals in the workplace," as the statute states, but to the disabled individual himself). The fact that the plaintiff's arguments were not successful in this case "doesn't make them frivolous." *R.P.*, 631 F.3d at 1126. More fundamentally, however, it is entirely reasonable for practitioners in a small law firm (or even counsel in a large firm) to think that the Americans with Disabilities Act might apply in a case concerning a child with disabilities and to set forth that

contention in a complaint. Thinking so, right or wrong, is not a ground for sanctions.

The arguments against sanctioning plaintiff's counsel for bringing the mother's legitimate intimidation claim under what the majority believes to be the wrong statutes — § 1983 and the ADA — as well as under what it holds to be the right one — the Rehabilitation Act — are especially strong considering the minimal costs that the defendant incurred "solely by virtue of the need to defend against" these claims. *Harris v. Maricopa Cnty.*, 631 F.3d 963, 971 (9th Cir. 2011). As the majority opinion correctly states, a court may grant attorney's fees to the defendant "only for costs that the defendant would not have incurred but for the frivolous claims." *Fox v. Vice*, 131 S. Ct. 2205, 2211 (2011). In this case, it is impossible for those costs to be more than a minimal amount, if any. All of the time and effort that the defendant expended defending against the substance of the plaintiff's § 1983 and ADA claims would have been expended even if the plaintiff had not brought those claims because the § 1983 and ADA claims were based on the very same facts as the non-frivolous Rehabilitation Act claim. The only costs the defendant theoretically incurred that it would not have but for the § 1983 and ADA claims are costs relating to asserting that *Belanger* barred the § 1983 claim and costs relating to asserting that the ADA did not apply in this case. The former required making an argument that California school districts surely are prepared to make in any § 1983 case, and the latter basically required reproducing the statutory text.

Although the award in this case should, therefore, be extremely low, the majority nevertheless should have heeded the warning that we offered in *R.P.*:

> Lawyers would be improperly discouraged from taking on potentially meritorious IDEA cases if they risked being saddled with a six-figure judgment for bringing a suit where they have a plausible, though ultimately unsuccessful argument, as here. Such a procrustean interpretation of section 1415(i)(3)(B)(i)(II) is inconsistent with the IDEA's objective of "ensur[ing] that the rights of children with disabilities and parents of such children are protected."

*R.P.*, 631 F.3d at 1126 (quoting 20 U.S.C. § 1400(d)(1)(B)) (citation omitted). By punishing a small firm for arguing a non-frivolous claim under the wrong sections of the United States Code, the precedent established by the majority opinion will discourage disability lawyers from taking on the very cases that the IDEA sought to encourage. In light of the majority's opinion, small firms will have to weigh the risk that they will incur a costly sanction for a minor legal error intended to benefit a disabled child. This despite the fact that IDEA practitioners — indeed, nearly all civil rights practitioners — rarely have the time or the staff to handle the volume of cases for which they are responsible with the same attention or devotion of resources as their counterparts who represent the defense.

We must be sensitive to imposing sanctions in IDEA cases, as it is critical that we keep the federal courts open to IDEA claims, counsel, and parties. Indeed, it is the clients with IDEA complaints who in the end will suffer if lawyers become reluctant to bring such cases before us. To further the purpose of the IDEA, we must allow counsel for IDEA plaintiffs the leeway to handle their cases in a practical manner. The majority, unintentionally, fails to abide by this

rule. In doing so, it sets a precedent that is at odds with the core purpose of the IDEA.

There is an additional issue in this case, which is governed by the same principles we have discussed above: should we affirm the sanctioning of plaintiff's counsel for reasserting the ADA and § 1983 claims in an amended complaint after those claims had previously been dismissed with prejudice? Here, the circumstances provide the answer. The facts show that counsel agreed to dismiss those claims by stipulation almost immediately after opposing counsel objected to their inclusion in the amended complaint. In the Rule 11 context, this fact would end our inquiry; we would not sanction plaintiff's counsel. *See* Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends. (explaining that Rule 11 "generally provid[es] protection against sanctions if [attorneys] withdraw or correct contentions after a potential violation is called to their attention"); *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (explaining that the purpose of Rule 11's "safe harbor" provision is to allow counsel to withdraw claims in order to "protect[] himself totally from sanctions"). Although the IDEA does not contain the "safe harbor" provided in Federal Rule of Civil Procedure 11(c)(2), we have held that — in light of the legislative history of the IDEA — we must in the IDEA context rely on "Rule 11 cases to determine whether the district court abused its discretion in awarding attorney's fees to the school district." *R.P.*, 631 F.3d at 1125. Our inquiry here, therefore, must similarly end with the fact that the ADA and § 1983 claims were dismissed by stipulation of the parties. Otherwise, in the IDEA context we would encounter the very issue that motivated the adoption of a "safe harbor" in Rule 11 — counsel would be "reluctant to abandon a questionable contention lest that be viewed as evidence" that his contention was frivolous. Fed. R. Civ. P. 11 advisory

committee's notes to 1993 amends.  The majority's holding to the contrary creates an unnecessary incongruity between the IDEA and Rule 11 without any basis for doing so.

Moreover, whether or not plaintiff's counsel's actions constituted a technical violation of our pleading rules, I would hold that they do not warrant sanctions.  We should sanction plaintiff's counsel in an IDEA case for continuing to litigate a claim that was dismissed with prejudice only when the continued litigation was deliberate.  In this case, the school district bore "the burden of establishing entitlement to an award."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  It made no showing, however, that plaintiff's counsel's renewed litigation of the dismissed claims was intentional.  In fact, the evidence is to the contrary.  Although the plaintiff reasserted her ADA and § 1983 claims after they were dismissed with prejudice, the parties dismissed them by stipulation almost immediately after the defendant filed its motion to dismiss. Moreover, the plaintiff's reassertion of these dismissed claims did not create any significant additional work for defense counsel, who needed only to state that the claims had already been dismissed with prejudice.  Given that the reassertion of the failed claims did little or no harm to the defendant and could have caused little or no expenditure of defendant's counsel's time and energy, I would not sanction disability rights attorneys for what was, in all likelihood, a simple mistake by counsel or another employee of an under-staffed law firm — a mistake that it corrected almost immediately by stipulation.

Due to the minimal costs that the defendant incurred "solely by virtue of the need to defend against" the claims that the majority erroneously finds to be frivolous, *Harris*, 631 F.3d at 971, I fully expect the award in this case to be nominal at most.  The majority opinion nevertheless creates

an unfortunate precedent.  I would hope that on rehearing the majority, which has otherwise issued an excellent opinion that is fully consistent with the letter and spirit of the IDEA, will reconsider and delete the few offending paragraphs affirming sanctions — paragraphs that sound so jarring and contrary a note to the rest of its disposition.